[No. B147909. Second Dist., Div. Six. Jan. 22, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID DYER, Defendant and Appellant.

## COUNSEL

Jerry D. Whatley, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Marc E. Turchin, Acting Assistant Attorney General, Kenneth C. Byrne, Steven D. Matthews and Xiomara Costello, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COFFEE, J.**—David Dyer appeals from the judgment (order of commitment) entered following a court trial at which he was determined to be a mentally disordered offender (MDO). (Pen. Code, § 2962 et seq.)[1] He contends the trial court erred in concluding that his underlying crime of cruelty to an animal involved the use of force or violence as required by section 2962, subdivision (e)(2)(P). We affirm.

### Factual and Procedural Background

In November of 1997, members of the Oroville Fire Department were dispatched to the scene of a trailer. Upon arrival, the firefighters looked into the window of the trailer, saw fire coming from a barbecue inside and blood on the floor, and began to pry open the locked door. Appellant opened the door and told the firefighters to get out of his home. After several attempts to get him to leave the burning trailer, the firefighters physically pulled him from the trailer and detained him.

Inside the trailer, the firefighters found a dog with blood dripping from an approximately 10-inch laceration to its neck, an ignited barbecue, a large plate with a fork and knife on it, and a pocketknife with two broken blades covered with dog hair. Appellant had blood on his hands and arms from the dog. Arresting officers concluded appellant was planning to cook and eat the dog. The dog was removed from the trailer, taken to a veterinarian, and later recovered from its injuries. Appellant admitted to "knifing" the dog, claiming it had attempted to bite him. He later admitted he was going to eat the dog because he was hungry.

Appellant was charged with cruelty to an animal, a felony violation of section 597, subdivision (a). He was taken to Butte County Behavioral

---

[1]All statutory references are to the Penal Code.

Health Center, evaluated by a psychiatrist and clinician, and diagnosed as suffering from paranoid schizophrenia. In June of 1998, he pleaded nolo contendere to the offense. He was subsequently found to be incompetent by the court and was transferred to Napa State Hospital, where he remained until January of 2000. He was diagnosed with a schizoaffective disorder and placed on medication.

In March of 2000, appellant was sentenced to prison for two years, received credit for time served, and was released on parole. A few days later, he attacked his father, put him in a "headlock," and punched him repeatedly in the face, body and throat. Police officers responding to the scene found appellant irrational and unable to respond sensibly to questions. He became combative, attempted to hit an officer, yelled obscenities, and challenged an officer to fight. He was arrested for disturbing the peace, battery, and resisting arrest, and his parole was revoked.

In September of 2000, appellant was found to be emotionally volatile and agitated. He was again diagnosed as suffering from a schizoaffective disorder and was transferred to Atascadero State Hospital (ASH).

In October of 2000, the chief psychiatrist for the Department of Corrections certified that appellant was an MDO. The following December, the Board of Prison Terms (BPT) determined he met the criteria of an MDO and ordered him committed to ASH as a condition of his parole. Appellant petitioned the superior court for a hearing to determine the validity of the BPT's finding and waived his right to a jury trial.

At trial, appellant's treating psychologist, Dr. William Safarjan, testified. The reports of two other psychologists, Drs. Lance Portnoff and Michele Reed, were also received into evidence. All three mental health experts concurred that appellant suffered from a severe mental disorder, the disorder was a cause or a contributing factor to the crime for which he was sentenced to prison, he was not in remission, and he had received the requisite 90 days of treatment before his parole date. Drs. Safarjan and Portnoff agreed that due to his disorder he represented a substantial danger of physical harm to others.

The experts were uncertain whether cruelty to an animal qualified as an MDO offense. Although Dr. Safarjan agreed that cutting a dog's throat involved an act of force, he was "not sure whether it falls under the current [MDO] requirement." Dr. Portnoff shared the same uncertainty as to whether an assault on a dog was a crime of force or violence. However, relying upon the fire, he concluded the offense was violent because "the setting of the fire

posed a serious risk of harm (it is unclear if cutting the throat of a non-human victim qualifies, but if so then that aspect would also involve violence with serious bodily injury)." Finally, Dr. Reed believed the underlying crime was violent and heinous but concluded it did not qualify for MDO commitment because she understood the reference in section 2962 to "force or violence" to mean a crime committed against human beings.

The trial court concluded appellant met the criteria under section 2962 and committed him to the California Department of Mental Health for treatment. The court reasoned that (1) the circumstances of the crime were similar to arson in that appellant set a dangerous fire within a dwelling; and (2) section 2962 dealt with violent offenses, not necessarily violence directed towards human beings. "And I think it's clear that when you cut a dog's throat with a knife . . . it is a violent offense."

## Discussion

 The MDO law currently applies only to prisoners serving sentences for the crimes enumerated in section 2962, subdivision (e). (*People v. Butler* (1999) 74 Cal.App.4th 557, 560 [88 Cal.Rptr.2d 210].) The qualifying crime must either be listed in section 2962, subdivision (e)(2)(A) through (O), or come within the following catchall provision of subdivision (e)(2)(P): "A crime not enumerated in subparagraphs (A) to (O), inclusive, in which the prisoner used force or violence, or caused serious bodily injury as defined in paragraph (4) of subdivision (f) of Section 243."

Appellant was convicted of a felony violation of section 597, subdivision (a), which prohibits the malicious and intentional maiming, torturing, wounding or killing of an animal.[2] The question presented here is whether appellant's conviction involved the use of "force or violence" within the meaning of the catchall provision or whether the provision requires that the object of that force or violence be a human being. Based on the plain language of the statute and its legislative history, we conclude his offense qualifies him for an MDO commitment.

 Our role in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*People v. Jefferson*

---

[2]Section 597, subdivision (a), provides that "every person who maliciously and intentionally maims, mutilates, tortures, or wounds a living animal, or maliciously and intentionally kills an animal, is guilty of an offense punishable by imprisonment in the state prison, or by a fine of not more than twenty thousand dollars ($20,000), or by both the fine and imprisonment, or, alternatively, by imprisonment in a county jail for not more than one year, or by a fine of not more than twenty thousand dollars ($20,000), or by both the fine and imprisonment." Other types of convictions for cruelty to animals are punishable only as misdemeanors and would not qualify an individual for an MDO commitment. (E.g., §§ 596, 597f.)

(1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].) Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning and construing them in context. (*People v. Lawrence* (2000) 24 Cal.4th 219, 230-231 [99 Cal.Rptr.2d 570, 6 P.3d 228].) If the plain language of the statute is clear and unambiguous, our inquiry ends and there is no need for judicial construction. (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572 [88 Cal.Rptr.2d 19, 981 P.2d 944]; *People v. Walker* (2000) 85 Cal.App.4th 969, 973 [102 Cal.Rptr.2d 637].) " ' "If there is no ambiguity in the language of the statute, '. . . the Legislature is presumed to have meant what it said, and the plain meaning of the statute governs.' " ' " (*Lawrence*, at pp. 230-231.)

■ The original version of the MDO law did not contain a list of specific crimes but defined a qualifying offense as "a crime in which the prisoner used force or violence, or caused serious bodily injury . . . ." (Former § 2962, subd. (e), added by Stats. 1986, ch. 858, § 2, p. 2952.) The statute did not provide a definition of the terms "force" or "violence." In *People v. Collins* (1992) 10 Cal.App.4th 690 [12 Cal.Rptr.2d 768], this court, in construing section 2962, concluded that the words "force" and "violence" should be given their ordinary meanings. We noted the common meaning of the word "force" was arguably incompatible with the apparent legislative intent underlying the MDO law. "For example, the use of the word 'force' does not necessarily mean force against the person and may theoretically be based upon a crime which entails the use of force on property, e.g., forced entry of a dwelling to commit a residential burglary." (*Collins*, at p. 697.) We suggested the Legislature might wish to amend the definition of what qualifies as an MDO offense since "[o]ur reading of the materials [indicated] . . . the Legislature may have had in mind those offenses specified in section 667.5, subdivision (c) . . . ." (*Id.* at pp. 697-698.)

In 1995, partly in response to our decision in *People v. Collins, supra*, 10 Cal.App.4th 690, the Legislature amended section 2962 to add a list of specific offenses subject to the MDO treatment, including voluntary manslaughter, kidnapping, robbery or carjacking accompanied by a deadly weapon use enhancement, forcible rape, lewd acts upon a child under 14 years of age, continuous sexual abuse, arson causing great bodily injury under section 451, explosion of a destructive device, and any felony where a firearm use enhancement was found true. (§ 2962, subd. (e)(2)(A)-(O), as amended by Stats. 1995, ch. 761, § 1.) The amendment retained the original version of the statute as a catchall provision in section 2962, subdivision (e)(2)(P). As appellant observes, not all of the crimes specifically listed in the 1995 amendment qualified as violent felonies under section 667.5,

subdivision (c). The amendment eliminated the need to independently prove force, violence, or serious bodily injury for defendants convicted of an enumerated crime, but continued to treat nonenumerated crimes involving force, violence, or serious bodily injury as MDO offenses. Thus, the 1995 amendment expanded the number of qualifying offenses, rather than narrowing it to include only those violent felonies listed under section 667.5, as we suggested in *Collins*.

In *People v. Anzalone* (1999) 19 Cal.4th 1074 [81 Cal.Rptr.2d 315, 969 P.2d 160], the Supreme Court decided the question whether an unarmed robbery, accomplished by a simple nonthreatening note and demand for money, involved the use of "force or violence" within the meaning of the catchall provision of section 2962, subdivision (e)(2)(P). Because the statute specifically listed robbery with weapon use as an MDO offense, the court, applying the principle *expressio unius est exclusio alterius*, held that an unarmed robbery committed without the use of actual force did not come within the catchall provision. (*Anzalone*, at pp. 1080-1081.)

In 1999, in response to *Anzalone*, the Legislature amended section 2962 to add as a qualifying offense "[a] crime in which the perpetrator expressly *or impliedly threatened another* with the use of force or violence likely to produce substantial physical harm in such a manner that a reasonable person would believe and expect that the force or violence would be used." (§ 2962, subd. (e)(2)(Q), as amended by Stats. 1999, ch. 16, § 1, italics added.) The Legislature again retained the catchall provision of section 2962, subdivision (e)(2)(P), for all other offenses involving force, violence or serious bodily injury that would have been treated as qualifying offenses under the original version of the MDO law. This amendment, like the 1995 amendment, expanded the crimes that could be treated as qualifying offenses.

Appellant argues that the legislative efforts to expand the scope of the MDO law have been directed at crimes involving human beings, not animals or property, and that, therefore, we should interpret the catchall provision as only applying to crimes of force or violence directed at human beings. His contention is unpersuasive.

The plain language of section 2962, subdivision (e)(2)(P), provides that any crime of force or violence qualifies for an MDO commitment. Nothing in section 2962 limits the qualifying offenses to crimes committed against human beings. Appellant's suggestion that we interpret this catchall provision to impose such a limitation would require us to judicially insert the words "against another" or "against a person" after the phrase "force or violence" in subdivision (e)(2)(P).

Appellant's suggestion that the phrase "or caused serious bodily injury" in section 2962, subdivision (e)(2)(P), limits the phrase "force or violence" to crimes against persons is untenable. Subdivision (e)(2)(P) is written in the disjunctive, listing alternative categories of MDO eligible offenses, i.e., any crime not enumerated "in which the prisoner used force *or* violence, *or* caused serious bodily injury as defined in paragraph (4) of subdivision (f) of Section 243." (See, e.g., *People v. Collins, supra,* 10 Cal.App.4th at p. 697 [legislative choice of words "force," "violence," or "serious bodily injury" viewed as separate and distinct]; *People v. Valdez* (2001) 89 Cal.App.4th 1013, 1016-1017 [107 Cal.Rptr.2d 783] [sexual battery qualified as an MDO offense where it involved force but not serious bodily injury].) The fact the Legislature used the alternative phrase "*or caused serious bodily injury*" in the catchall provision indicates its intent to include crimes of force or violence that do not necessarily cause serious bodily injury.

In supplemental briefing, appellant argues that application of the principle of *ejusdem generis* supports his position that the catchall provision applies only to crimes of force or violence directed at human beings. ██ This principle aids in the construction of a statute if there is ambiguity. (*In re Robert B.* (2001) 93 Cal.App.4th 963, 967-969 [113 Cal.Rptr.2d 565]; *People v. Fields* (1980) 105 Cal.App.3d 341, 344 [164 Cal.Rptr. 336].) Under that canon " 'where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The rule is based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense, it would not have mentioned the particular things or classes of things which would in that event become mere surplusage.' " (*Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 331, fn. 10 [158 Cal.Rptr. 370, 599 P.2d 676].) ██ We conclude the principle has no application here, where the language of section 2962, subdivision (e)(2)(P), is unambiguous and the catchall provision is expressly intended to be broader than the categories enumerated above it. (*Moore v. California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1012 [9 Cal.Rptr.2d 358, 831 P.2d 798] [principle of *ejusdem generis* does not apply where its application would frustrate the intent underlying a statute].)

The purpose underlying the MDO law is to protect the public by identifying those offenders who exhibit violence in their behavior and pose a danger to society. (§ 2960.) It does not take a leap in logic to conclude that an individual who violently or forcefully injures an animal might be dangerous to people. The Legislature recognized as much when, in section 597, subdivision (g), it authorized the trial court to require counseling as a

condition of probation for a violation of section 597. Indeed, the legislative history underlying this subdivision provides that it was introduced to provide intervention before violent behavior escalates: "The link between animal abuse and future human abuse has been, and continues to be, documented. Demonstrating the seriousness of acts of aggression toward animals, the Federal Bureau of Investigation includes it in their serial killer triad which is used to profile suspects . . . . The tragic examples are evident: [¶] 1. Mass murderer and cannibal Jeffrey Dahmer killed neighborhood pets and impaled a dog's head before he moved on to gruesome acts against people. [¶] . . . [¶] 3. Carroll Edward Cole, convicted of 35 murders, admitted his first act of violence was as a young child when he strangled a puppy. [¶] . . . If someone commits acts of violence against creatures that cannot defend themselves, it is possible that those actions are a precursor to abuse of children or elders. . . ." (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 1991 (1997-1998 Reg. Sess.) Aug. 18, 1998.)

Here, it was undisputed that appellant's crime of slitting a dog's throat was a violent and heinous offense. Appellant conceded as much and all three psychologists agreed that he used force or violence in the commission of the offense. (See *People v. Valdez, supra,* 89 Cal.App.4th 1013 [qualified mental health professional may render an opinion on the criterion of force or violence and may rely upon the underlying probation report in formulating that opinion].) Just as the Legislature predicted, his violent act against a helpless animal was followed by an attack against a family member. Appellant poses a danger to the public, he committed a violent crime against a living creature, and he fits within the purposes of the MDO law. We conclude his conviction for cruelty to an animal under section 597 rendered him eligible for an MDO commitment, and substantial evidence supported the trial court's finding that he met all of the MDO criteria. (§ 2962, subds. (a)-(e).)

We recognize that dogs are considered personal property or chattels for some purposes. (See, e.g., § 491 ["Dogs are personal property, and their value is to be ascertained in the same manner as the value of other property"].) But dogs are different than inanimate objects. They are living, breathing creatures, and the slashing of a dog's throat is an act of violence against a living being. Applying the MDO statute in this context is consistent with the legislative intent to protect the public from violent and dangerous felons.

We acknowledge that our holding today may support the conclusion that a crime against an inanimate object or property can qualify as a crime of force or violence under the catchall provision of section 2962, subdivision

(e)(2)(P). Nevertheless, "we take the statute as we find it." (*People v. Collins, supra,* 10 Cal.App.4th at p. 698.) We have previously urged the Legislature to clarify the meaning of force or violence under the MDO statute, and it has not done so. To the contrary, the amendments have only broadened the category of qualifying offenses. If the Legislature believes that crimes qualifying for MDO treatment must involve acts of force or violence against humans, we invite it to amend the statute.

Finally, we stress that a prisoner is only eligible for an MDO commitment if he or she satisfies the other criteria set forth in section 2962, to wit, the prisoner must have a severe mental disorder that is not in remission or cannot be kept in remission without treatment, the severe mental disorder must have been one of the causes or an aggravating factor in the commission of the crime for which he or she was sentenced to prison, the prisoner must have been in treatment for the disorder for 90 days or more within the year prior to his parole release date, and the prisoner by reason of his severe mental disorder must represent a substantial danger of physical harm to others, i.e., people. These other factors give adequate protection to society and the defendant. Here, there was substantial evidence demonstrating that appellant satisfied all of these criteria.

The judgment (order of commitment) is affirmed.

Gilbert, P. J., concurred.

**PERREN, J.**—I respectfully dissent.

The majority concludes that the broad language of Penal Code section 2962, subdivision (e)(2)(P) permits a mentally disordered offender (MDO) finding based on any crime in which the offender used force or violence, including force or violence directed against an animal.[1] I interpret the statute to apply only if the threat or use of force or violence in the commission of the crime for which the person was sentenced to state prison is force or violence directed against a human being. (See § 2962, subd. (b).)

There can be no dispute that appellant's crime was vile and despicable. I agree with the majority that his act of slashing the throat of the dog was "a violent and heinous offense." (Maj. opn., *ante,* at p. 456.) It merited the conviction and the punishment that he received. But, regardless of how contemptible the crime, I cannot conclude that it supports institutionalization under the MDO statute in addition to, and after completion of, the sentence specified for the offense. No matter how wrong the act, I conclude the law does not permit it.

---

[1]All statutory references are to the Penal Code unless otherwise stated.

Section 2962, subdivision (e)(2)(P) should not be extended to crimes directed at animals without a specific legislative expression of that intent. The MDO statute is a civil proceeding but, as the Chief Justice noted with respect to the analogous Sexually Violent Predators Act (Welf. & Inst. Code, § 6600 et seq.), a significant and compelling private interest is at stake. (*People v. Otto* (2001) 26 Cal.4th 200, 217 [109 Cal.Rptr.2d 327, 26 P.3d 1061] (conc. opn. of George, C. J.).) An MDO, like the sexually violent predator, faces a complete loss of liberty for a period of time, followed by potentially indefinite recommitment proceedings. (*Ibid.*) Courts should be certain that the statutory requirements for a commitment are clear and precise.

As the majority observes, section 2962, subdivision (e)(2)(P) covers offenses where force or violence is used, without expressly limiting the object of such force or violence to human beings. The mere absence of limiting language, however, does not make the statute unambiguous and does not compel the conclusion that a crime of force or violence against an animal qualifies for MDO treatment.

In *People v. Collins* (1992) 10 Cal.App.4th 690, 697-698 [12 Cal.Rptr.2d 768], we stated that "force" and "violence" are words of "ordinary meaning and require no further definition." I would expand on that assertion by stating that, although the words "force" and "violence" may have a plain meaning standing alone, a crime "in which the prisoner used force or violence" does not have a plain and unambiguous meaning in the context of the MDO statute. The meaning of "force" varies according to the statute being considered, and the legal definition in a particular statute may differ from the word's meaning in "common parlance." (*People v. Richie* (1994) 28 Cal.App.4th 1347, 1360 [34 Cal.Rptr.2d 200]; *People v. McElheny* (1982) 137 Cal.App.3d 396, 403 [187 Cal.Rptr. 39]; *People v. Pitmon* (1985) 170 Cal.App.3d 38, 52 [216 Cal.Rptr. 221].) The same may be said about the word "violence" and, in some contexts, courts have used "violence" as a synonym for "force." (See *People v. Davison* (1995) 32 Cal.App.4th 206, 213-214 [38 Cal.Rptr.2d 438]; *People v. Collins, supra,* 10 Cal.App.4th at p. 694.)

Moreover, the question of whether the MDO statute extends beyond crimes directed at human beings was touched on in *Collins* without resolution. In *Collins,* the court recognized that section 2962, subdivision (e)(2)(P) could "theoretically" include a crime entailing the use of force against property, but stated that this result would be "at odds with the legislative history" to limit MDO commitments to violent offenders. (*People v. Collins, supra,* 10 Cal.App.4th at pp. 697-698.) *Collins* suggested further legislation

to clarify the crimes qualifying for MDO treatment, and this suggestion led to the 1995 amendment to section 2962. (*People v. Anzalone* (1999) 19 Cal.4th 1074, 1082 [81 Cal.Rptr.2d 315, 969 P.2d 160].)

Prior to 1995, section 2962 included no list of qualifying crimes and defined an MDO offense generally as "a crime in which the prisoner used force or violence, or caused serious bodily injury." (Former § 2962, subd. (e), added by Stats. 1986, ch. 858, § 2, p. 2952, amended by Stats. 1989, ch. 228, § 1, p. 1252.) The 1995 amendment added a list of specific offenses which qualified for MDO treatment in subdivision (e)(2)(A)-(O), but did not expressly limit the scope of a crime involving "force or violence" in subdivision (e)(2)(P). It left subdivision (e)(2)(P) unchanged. (Stats. 1995, ch. 761, § 1.)

Nevertheless, every offense listed in section 2962, subdivision (e)(2)(A)-(O) is limited to acts which endanger or harm human beings through the use of force or violence. Even the inclusion of arson is limited by its reference to section 451, subdivision (a), which specifically refers to great bodily injury, or to other subdivisions, "where the act posed a substantial danger of physical harm to others." (§ 2962, subd. (e)(2)(L).)[2]

The Supreme Court stated that the legislative intent of section 2962, including the 1995 amendment, "was to require treatment of defendants as MDO's only in certain limited situations, namely where, because of mental disorder, the prisoner inflicted serious bodily injury or committed such forcible or violent crimes as manslaughter, mayhem, kidnapping, rape, or robbery with dangerous weapon use." (*People v. Anzalone, supra,* 19 Cal.4th at p. 1081, italics omitted.) In 1995, the Legislature made it clear that qualifying offenses include offenses which are not violent felonies under section 667.5, but nowhere in the original or amended version of section 2962 is there any reference to a crime which is not directed against a human being. The majority's claim that section 2962, subdivision (e)(2)(P) is unambiguous is based on the words "force" and "violence" independent of the MDO statute.

The majority emphasizes that a person who violently or forcefully injures an animal might be dangerous to people, or become dangerous to people as his or her violence escalates from animals to human beings. It does not follow, however, that involuntary confinement mandated by the MDO statute should be extended to apply to a category of persons who have not committed a crime against a person.

---

[2]Similarly, sections 12022.5, 12022.53 and 12022.55, concerning the use of firearms, all require the use of the weapon in the presence of a human being.

Section 2962, subdivision (e)(2)(P) is ambiguous with respect to its application to a crime involving the use of force or violence against animals or property, rather than people. Here, the rule of statutory construction known as *ejusdem generis* is available to provide guidance in resolving this ambiguity. *Ejusdem generis* applies when a general term follows a list of specific items or categories and limits application of the general term to matters that are similar to those which are specifically enumerated. (*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 141 [96 Cal.Rptr.2d 485, 999 P.2d 718]; *People v. Gordon* (2001) 90 Cal.App.4th 1409, 1412 [109 Cal.Rptr.2d 725].) The rule presumes that, if it intended a general phrase to be used in its unrestricted sense, the Legislature would not also set forth restricted examples which would be surplusage. (*Kraus, supra,* at p. 141.)

In this case, *ejusdem generis* restricts the crimes qualifying for MDO treatment under section 2962, subdivision (e)(2)(P) to crimes similar to those specified in subdivision (e)(2)(A)-(O). Since all of the specified crimes involve the use of force or violence against human beings, subdivision (e)(2)(P) should be interpreted to exclude crimes of force or violence solely against animals.

The majority concedes that its holding "may support the conclusion that a crime against an inanimate object" qualifies as a crime of force or violence permitting MDO treatment. (Maj. opn., *ante*, at p. 456.) I conclude that the holding requires such a conclusion and has the potential of leading to results unquestionably beyond the intent of the Legislature or the language of the legislation.

Appellant's petition for review by the Supreme Court was denied April 17, 2002.