[No. B189383. Second Dist., Div. Four. Apr. 24, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
ORLANDO TERREL SMITH, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and III of the Discussion.

**COUNSEL**

Bruce G. Finebaum, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Steven D. Matthews and David D. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**EPSTEIN, P. J.**—Appellant Orlando Terrel Smith argues the trial court improperly imposed a deadly weapon use enhancement (Pen. Code, § 12022, subd. (b)(1))[1] because he used the weapon (a knife) to kill a dog rather than a human being, and because, he claims, use of the knife is an element of the crime of animal cruelty (§ 597, subd. (a)) as charged. In the published portion of this opinion, we reject both arguments.[2] In the unpublished portion of the opinion, we consider appellant's contentions that the court erred in allowing a police officer to testify to statements that were not disclosed to appellant until the morning of testimony, and by not instructing the jury on the People's alleged violation of a reciprocal discovery rule; and his claim of cumulative prejudice. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Appellant and Latisha Bell dated for about a year. During that time, appellant gave Bell's daughter a puppy named Raven. Appellant had a bad

---

[1] All further statutory references are to the Penal Code.

[2] Certified for publication are the initial paragraph, the Factual and Procedural Summary, part I of the Discussion and the Disposition.

temper. He knew Bell and her daughter loved Raven, and, on occasion, would threaten to kill Raven when he was angry with Bell.

In early October 2005, Bell ended the relationship. Shortly thereafter, on October 7, 2005, appellant called Bell several times. He was angry, and told Bell that bad things were going to start happening to her. He warned that because she had caused him pain, he was going to cause her pain. While on the phone with appellant, Bell heard his voice coming from her backyard. After seeing someone walk past her daughter's window, Bell called 911.

After calling 911, Bell heard Raven "screeching." When she looked outside, she saw Raven bleeding. Officers arrived at Bell's house, and appellant continued to call Bell. During one conversation, Bell asked appellant why he killed Raven. He told her that he had warned bad things were going to happen to her, and this was only the beginning. When Bell posed the question to him again, appellant denied killing Raven and asked Bell how she knew he did not send someone else to kill the dog.

Appellant continued to call Bell that evening. Steven Harbeson, one of the officers who arrived at Bell's house, answered several of those calls. When Harbeson asked appellant if he killed Raven, appellant would not admit or deny it. Appellant then asked Harbeson if he could be arrested for killing his own dog. Harbeson told appellant, untruthfully, that a neighbor had seen appellant kill Raven. Appellant then hung up. When appellant called back, Harbeson told him that the neighbor saw him hop over a wall. Appellant told Harbeson that he now knew Harbeson was lying because he did not hop over a wall.

When animal control officers arrived they found Raven dead, with a metal knife blade sticking out of her back. Appellant was arrested and denied killing Raven. He claimed he was at his aunt's house that evening, which she corroborated.

Appellant was charged with making criminal threats, in violation of section 422 (count 1), and felony cruelty to an animal, in violation of section 597, subdivision (a) (count 2). It was alleged that he used a deadly weapon, within the meaning of section 12022, subdivision (b)(1), in the commission of count 2. A jury acquitted him of count 1, found him guilty of count 2 and found the deadly weapon allegation true. Appellant was sentenced to the low term of 16 months on count 2, and the one-year deadly weapon use enhancement was stayed. He filed a timely notice of appeal.

## DISCUSSION

### I

Appellant argues that imposition of the deadly weapon use enhancement of section 12022, subdivision (b)(1), was improper for two reasons: (1) it does not apply when the weapon is used against an animal, and (2) use of a deadly weapon is an element of the crime of animal cruelty as charged.

Section 12022, subdivision (b)(1) states: "Any person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless use of a deadly or dangerous weapon is an element of that offense."

Appellant contends this enhancement can only be imposed when the deadly or dangerous weapon is used against a human being because in *People v. Wims* (1995) 10 Cal.4th 293, 302 [41 Cal.Rptr.2d 241, 895 P.2d 77] (*Wims*),[3] the Supreme Court stated, "[i]n order to find 'true' a section 12022(b) allegation, a fact finder must conclude that, during the crime or attempted crime, the defendant himself or herself intentionally displayed in a menacing manner or struck someone with an instrument capable of inflicting great bodily injury or death." Appellant argues the term "someone" can only refer to a human being.

*Wims* observed that the jury instruction for section 12022, subdivision (b) is adapted from the language of section 1203.06, which prohibits probation where a firearm is used in the commission of certain crimes. (*Wims, supra*, 10 Cal.4th at p. 302.) Section 1203.06, subdivision (b)(2) states: "As used in subdivision (a), 'used a firearm' means to display a firearm in a menacing manner, to intentionally fire it, [or] to intentionally strike or hit a human being with it . . . ." Appellant interprets this language to mean that a firearm is "used" only when the victim is a human being. Because the jury instruction for section 12022, subdivision (b) was adapted from section 1203.06, appellant argues that section 12022, subdivision (b)(1) should be interpreted to apply only when a deadly or dangerous weapon is used against a human being. He points out that section 12022, subdivision (b) was added to the Penal Code the same year section 1203.06 was amended. Thus, he argues the Legislature viewed these sections as parallel provisions, and the definition of the word "use" in section 12022, subdivision (b)(1) should be imported from section 1203.06, subdivision (b)(2).

---

[3] *Wims* was limited on another ground in *People v. Sengpadychith* (2001) 26 Cal.4th 316, 326 [109 Cal.Rptr.2d 851, 27 P.3d 739].

■ We are not persuaded. Although the *Wims* court did use the word "someone" in discussing section 12022, subdivision (b), the crime in that case involved a human victim. (*Wims, supra*, 10 Cal.4th at p. 299.) *Wims* did not address the issue presented in this appeal. Appellant's argument for importing the definition of the word "use" from section 1203.06, subdivision (b)(2) is contrary to the plain meaning of section 12022, subdivision (b)(1). "In construing a statute, our role is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.] In determining intent, we must look first to the words of the statute because they are the most reliable indicator of legislative intent. [Citation.] If the statutory language is clear and unambiguous, the plain meaning of the statute governs. [Citation.]" (*People v. Lopez* (2003) 31 Cal.4th 1051, 1056 [6 Cal.Rptr.3d 432, 79 P.3d 548].)

■ The language of section 12022, subdivision (b)(1) prohibits the use of a deadly or dangerous weapon "in the commission of *a felony* or attempted felony," and states that an additional and consecutive one-year term *shall* be imposed for its violation. (Italics added.) The statute is subject to a single exception: where use of the deadly or dangerous weapon is an element of the underlying offense. Cruelty to an animal, in violation of section 597, subdivision (a), is a felony. (§ 17.) And as we shall discuss, use of a deadly or dangerous weapon is not an element of that offense. Thus, the plain meaning of section 12022, subdivision (b)(1) supports imposition of a deadly weapon use enhancement based on a violation of section 597, subdivision (a). (See *People v. Dyer* (2002) 95 Cal.App.4th 448, 454–455 [115 Cal.Rptr.2d 527] [a violation of § 597, subd. (a) is a crime of " 'force or violence' " and may be the basis for finding a defendant a mentally disordered offender since the statutory language is clear and does not except crimes of force or violence against animals].) If we were to follow appellant's interpretation, we would be required to insert the words " 'against a person' " into the statute. (See *Dyer,* at p. 454.) ■ We have no authority to " 'rewrite the statute to conform to an assumed intention which does not appear from its language.' " (*People v. Harris* (2006) 145 Cal.App.4th 1456, 1465 [52 Cal.Rptr.3d 577].)

■ Appellant also argues that use of a deadly weapon is an element of section 597, subdivision (a) as charged. Section 597, subdivision (a) states: "Except as provided in subdivision (c) of this section or Section 599c, every person who maliciously and intentionally maims, mutilates, tortures, or wounds a living animal, or maliciously and intentionally kills an animal, is guilty of an offense . . . ." The amended information charged appellant with "unlawfully, maliciously and intentionally stabb[ing] [a] dog to death to spite [his] girlfriend."

"The phrase 'element of the offense' signifies an essential component of the legal definition of the crime, *considered in the abstract*." (*People v.*

*Hansen* (1994) 9 Cal.4th 300, 317 [36 Cal.Rptr.2d 609, 885 P.2d 1022].) Considered in the abstract, use of a deadly or dangerous weapon is not an element of section 597, subdivision (a). Specifically, appellant was charged with inflicting cruelty on Raven by maliciously and intentionally killing her. Although appellant committed the crime by using a knife, the crime obviously can be committed without a deadly or dangerous weapon, or any weapon at all. An example is the malicious and intentional withholding of food and water until the animal dies. Section 12022, subdivision (b)(1) applies unless use of a deadly or dangerous weapon is an element of the offense, "and not merely the means by which the offense was committed or the factual predicate of a theory upon which the conviction was based." (*Hansen*, at p. 317.)

Appellant relies on *People v. McGee* (1993) 15 Cal.App.4th 107, 115 [19 Cal.Rptr.2d 12] (*McGee*), where the court states that "in determining whether use of a deadly weapon other than a firearm is an element of a section 245, subdivision (a)(1) conviction, the question is not simply whether, in the abstract, the section can be violated without using such a weapon. Rather, the conduct of the accused, i.e., the means by which he or she violated the statute, must be considered." A similar argument was considered and rejected in *People v. Ross* (1994) 28 Cal.App.4th 1151 [33 Cal.Rptr.2d 894]. In that case, the court stated that "the quoted language from *McGee* must be limited to the peculiar situation of a statute (§ 245, subd. (a)(1)) which can be violated in two specified ways, 'by assaulting a person with a deadly weapon other than a firearm *or* by means of force likely to produce great bodily injury.' [Citation.] [¶] Whereas the statute in *McGee* had two alternative forms, as to one of which weapons use *was* an element, in contrast this case presents no such problem." (*Id.* at p. 1156, fn. 7.) The definition of animal cruelty in section 597, subdivision (a) does not include, as an element of the offense, the use of a deadly or dangerous weapon. As *McGee* observes, "[t]he fact the accused used a knife . . . did not and could not transform his use of the knife into an essential element of the crime." (*McGee, supra*, at p. 114.)

Further, the court in *McGee* was concerned that a prosecutor could attempt "to evade the statute's exception and to increase the punishment imposed on defendant simply by deleting the assault with a deadly weapon allegation and by calling the charged offense assault by means of force likely to produce great bodily injury." (*McGee, supra*, 15 Cal.App.4th at pp. 116–117.) If so, "similarly situated defendants who assaulted their victims with deadly weapons . . . and were charged with violating section 245, subdivision (a)(1) could receive disparate punishment depending solely upon the language used in the pleadings. The one accused of assault with a deadly weapon would not be subject to the enhancement under section 12022, subdivision (b) while the

one accused of assault by means of force likely to cause great bodily injury would be subject to the additional punishment." (*Id.* at p. 117.) That problem is not presented here.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Willhite, J., and Manella, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 25, 2007, S153146. Werdegar, J., did not participate therein.

*See footnote, *ante*, page 89.