IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 21, 2015

## STATE OF TENNESSEE v. NOAH KEITH TIPTON

**Appeal from the Circuit Court for Monroe County**
**No. 14165     Andrew M. Freiberg, Judge**

---

**No. E2014-02531-CCA-R3-CD – Filed 12/15/2015**

---

CAMILLE R. MCMULLEN, J., dissenting.

I respectfully disagree with the conclusion reached by the majority in this case. For the reasons that follow, I would remand this matter to the trial court for Tipton to be placed in the community corrections program. In this appeal, Tipton contends that the trial court relied upon an erroneous interpretation of Tennessee Code Annotated section 40-36-106 in finding him statutorily ineligible for placement in the community correction program. He argues that the prior convictions relied upon by the court do not constitute a pattern of prior violent offenses pursuant to Tennessee Code Annotated section 40-36-102(11).[1] Specifically, he contends that (1) reckless endangerment does not meet the definition of a violent offense; (2) aggravated animal cruelty, as codified at Tennessee Code Annotated section 39-14-212, is classified as a property offense and not a crime of violence; and (3) the trial court improperly relied on Tennessee Code Annotated section 39-13-113(f)(1)-(3) (2006), rather than section 39-13-113 (2001), in finding that his 2001 charge for violating an order of a protection was a violent offense. Excluding the convictions that the trial court improperly classified as crimes of violence, Tipton claims the sole basis for the trial court's denial of his placement in the community correction program was charges reflected in his presentence report that did not result in convictions, which is likewise an improper basis to deny placement. Finally, Tipton argues that the trial court erred in finding that his needs would best be served by confinement because he arranged for placement in a drug rehabilitation program that had a bed waiting for him, accepted responsibility for his actions, was found to be credible by the trial court, had

---

[1] Section (11) provides as follows:

"Nonviolent felony offender"/ "nonviolent felony offense" means a person committing a felony offense, or a felony offense, that does not involve serious bodily injury, as that term is defined in §39-11-106, or death to a victim or bystander, does not involve threats reasonable calculated to produce such results and does not involve sexual contact or sexual penetration as those terms are defined in § 39-13-501.

only one prior felony conviction and nine misdemeanor convictions, and has never violated probation. In response, the State contends that the trial court properly denied Tipton placement in the community correction program. I agree with Tipton.

As conceded by the majority, the trial court erred in its application of subsection (F) of Tennessee Code Annotated section 40-36-106(a)(1). Additionally, as will more fully be discussed below, the trial court failed to articulate its reasons for finding Tipton ineligible for community corrections under subsection (c). Therefore, because the sentence imposed by the trial court does not reflect a proper application of the purposes and principles of our Sentencing Act, my review is for an abuse of discretion without a presumption of reasonableness.

Although the trial court recognized that section 40-36-106(B) makes a person convicted of "property related" or "felony offenses not involving crimes against the person" eligible for placement in the community corrections program, it considered the elements of the offense of aggravated animal cruelty coupled with the facts supporting the guilty plea in finding Tipton statutorily ineligible for placement in the community correction program. In other words, the record shows that the trial court classified aggravated animal cruelty as a violent offense against a person.[2] Tipton correctly notes that the aggravated animal cruelty statute has been classified by the Tennessee legislature as a property offense, not an offense against a person. However, while animals are "personal property for some purposes, they are different from other types of property, because animals are living, sentient beings." See Kirsten E. Brimer, Justice for Dusty: Implementing Mandatory Minimum Sentences for Animal Abusers, 113 PENN ST. L. REV. 649, 656 (2008). As such, courts have considered "malicious acts against animals as acts of violence towards living creatures." Id. (citing People v. Dyer, 115 Cal. Rptr. 2d 527, 532 (Cal. Ct. App. 2002) (even though abused animal was property of the abuser, the perpetrator-abuser remained a threat to society and further concluding that such "a crime against an inanimate object or property can qualify as a crime of force or violence")); see also People v. Garcia, 29 A.D.3d 255, 261, 812 N.Y.S.2d 66, 71 (2006) (observing that "the crime [of animal cruelty] was established in recognition of the correlation between violence against animals and subsequent violence against human beings. . . [t]hus, it must be inferred that the Legislature's concern was with the state of mind of the perpetrator rather than that of the victim."). With this in mind, I can conceive of circumstances under which aggravated animal cruelty may constitute a violent offense for purposes of determining placement in a community corrections program.

Nevertheless, the facts and circumstances here do not present such a case. The

---

[2] A person commits aggravated animal cruelty when, "with no justifiable purpose, he intentionally kills or intentionally causes serious physical injury to a 'companion animal,' in a depraved and sadistic manner[.]" T.C.A. § 39-14-212(a), (b)(1)-(2) (2006).

record shows that the dogs in Tipton's care were malnourished and suffered from neglect. One dog was found dead. Tipton testified that he used his dogs to hunt, and they suffered injuries as a result. The trial court repeatedly stressed Tipton's honesty and accredited his testimony that the injuries were inflicted by a bear and not him. Without more proof evincing the violent nature of the offense, the trial court erred in finding Tipton statutorily ineligible for placement in the community correction program due to his aggravated animal cruelty conviction. See e.g., State v. Sandra Kay Webb and Tabitha Nicole Webb, 130 S.W.3d 799, 803 (Tenn. Crim. App. 2003) (trial court sentenced defendants, convicted of forty-seven counts of cruelty to animals, to community corrections for eleven months and twenty-nine days for each count, with incarceration for sixty days). Finally, the trial court improperly classified the violation of the order of protection charge as a violent offense. There is no proof in the record that Tipton was convicted of violating an order of protection or any of the numerous charges listed in the presentence report. The presentence report in this case was woefully inadequate in apprising the trial court of Tipton's criminal history as evidenced by the trial court's repeated questions of the presentence report officer. While the majority stresses that the charges in the presentence report indicated violence, there was no proof offered at the hearing to support this assertion. To the extent the trial court relied upon the testimony of Gray to establish a pattern of behavior indicating violence, the record is again devoid of any present or past pattern of violent behavior. To the contrary, Gray testified that he had not personally observed Tipton to be violent. The record reflects one conviction for a violent felony offense, the 1998 felony reckless endangerment. As such, Tipton is eligible for placement in the community correction program under subsection (a).

After the trial court considered and denied placement in the community correction program under subsection (a), the court considered subsection (c) of the Community Corrections Act, known as the "special needs" provision, which states:

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

T.C.A. § 40-36-106(c) (2006). First, before being eligible for a community corrections sentence under subsection (c), the offender must be eligible for probation. State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996) (citing State v. Staten, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989); State v. Lanny Crowe, No. 01C01-9503-CC-00064, 1995 WL 392967, at *1 (Tenn. Crim. App. July 6, 1995)). Second, the trial court must determine whether the offender is suitable for placement in the community

corrections program by finding the following:

> (1) the offender has a history of chronic alcohol, drug abuse, or mental health problems, (2) these factors were reasonably related to and contributed to the offender's criminal conduct, (3) the identifiable special need (or needs) are treatable, and (4) the treatment of the special need could be served best in the community rather than in a correctional institution.

Id. at 439 (citing State v. Robert Wilson, No. 03C01-9209-CR-00305, 1993 WL 79626, at *5 (Tenn. Crim. App. Mar. 22, 1993)).

First, Tipton was eligible for probation because he was sentenced to eight years' incarceration. See T.C.A. § 40-35-303(a). The trial court determined that Tipton had a significant, chronic history of substance abuse and that his problems were treatable. My concern is that the trial court does not explicitly address whether Tipton's problems were reasonably related to his criminal conduct. The court simply stated, "it boils down to could these issues that are treatable be best served in the community rather than a correctional facility." After the trial court took the matter under advisement, it later denied relief relying primarily on the previous hearing. Although the record reflects that the trial court agonized over whether to place Tipton in the community correction program, it did not make explicit findings regarding whether Tipton's drug addiction was reasonably related to his criminal conduct or whether his addiction would be better treated in the community rather than incarceration. The court alluded to Gray's testimony and the fact that "there could be a problem," but Gray testified that he had never observed Tipton to be violent and would assist Tipton in his recovery. The trial court did not provide its reasoning for denial of community corrections under subsection (c) other than to say, "it [is] just too much violence," which was not supported by the record.

The record reflects that Tipton had a history of alcohol and drug use which was "reasonably related to and contributed to [Tipton's] criminal conduct[.]" The record further demonstrates that Tipton's drug addiction is treatable, as evidenced by his acceptance into the drug rehabilitation program, and that such treatment is best served in the community rather than in a correctional institution. While the majority seems to focus on the unsubstantiated charges within the presentence report, I believe it is significant that Tipton had not been convicted of an offense since 2001, nearly sixteen years prior to the instant offense. Moreover, aside from Tipton's minimal criminal history, he had never violated his probation, had never received court-ordered treatment for his drug or alcohol addiction, and had gone through a seven-year period of sobriety. I would conclude that the trial court's denial of Tipton's placement in a community correction program to serve his sentence is not supported by the record and that Tipton is

-4-

a proper candidate for community corrections under subsection (a). Additionally, even if there was some indication of violence based on his criminal history, as the majority concludes, Tipton was certainly a proper candidate for service of his sentence under the special needs provision of subsection (c). While the trial court has broad discretion in sentencing, such discretion is undisturbed by an appellate court only if it is supported by the record. See State v. Pollard, 432 S.W.3d 851, 861 (Tenn. 2013) (noting that Tennessee Code Annotated section 40-35-210(e) and State v. Bise, 380 S.W. 3d 682 (Tenn. 2012), specifically require trial courts to articulate the reasons for the sentence in accordance with the purposes and principles of sentencing in order for the abuse of discretion standard with a presumption of reasonableness to apply on appeal); see also State v. Cecelia M. Beasley, No. 01C01-9801-CR-00018, 1998 WL 626989, at *2 (Tenn. Crim. App., at Nashville, Sept. 16, 1998) (reversing and modifying judgment to place defendant on community corrections where the record failed to show that the trial judge considered the sentencing principles and failed to place on the record its reasons for arriving at the final sentencing decision). Accordingly, I would reverse the judgments of the trial court and remand for entry of judgments sentencing Tipton to community corrections and for consideration of other terms and conditions that the trial court deems appropriate pursuant to the Community Corrections Act.

_____
CAMILLE R. McMULLEN, JUDGE