[No. A064478. First Dist., Div. Three. Feb. 9, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
HERBERT N. DAVISON, Defendant and Appellant.

**COUNSEL**

Robert A. Vittoria, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Peggy S. Ruffra and Michael E. Banister, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CHIN, P. J.**—Herbert N. Davison appeals from his conviction for robbery. He contends that the trial court committed instructional error. We agree that the instructions were erroneous. However, we find that the error was harmless, and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the evening of February 10, 1993, Charlotte Rosebrough drove to a bank in Berkeley, parked her car in the bank's parking lot, and went to one of the bank's automatic teller machines (ATM). After inserting her card in the ATM, she "punched in Rapid Cash $40." While Rosebrough was waiting for the ATM to dispense her money, appellant[1] and another man "approached from . . . the rear to [her] right . . . seem[ingly] out of nowhere." After going to the ATM next to Rosebrough, the two men began "fiddling with the envelope drawer" and "staring" at Rosebrough. They stood "very close together." Appellant, who was closest to Rosebrough, told her to " '[s]tand back.' " According to Rosebrough, appellant spoke in "a calm . . .

---

[1]At trial, defense counsel conceded appellant's involvement in the incident, but argued that he committed theft instead of robbery.

but . . . firm voice," "a voice like he really meant business." As appellant spoke, he "sort of had a smirk on his face, a strange smile . . . ."

Upon hearing appellant's words, Rosebrough "felt [she] was in big trouble" and that she "was being robbed . . . ." She "responded immediately" by stepping back from the ATM. She followed the instructions because she "felt they meant business when they said 'Stand back,'" and she "didn't know if they were going to hit [her] or pull a weapon on [her] or what was their plan." Given her concerns, she "wanted to get some distance between these two men and [herself] just as a matter of personal safety." She therefore moved back 20 to 30 feet in the direction of her car, which she believed "would be safety for" her. As she did so, she "muttered an obscenity."

After Rosebrough retreated, the two men moved over to the ATM she was using. They then turned around and began to walk down Ashby Avenue toward Adeline. "[A]t this point [Rosebrough] was feeling very angry and [she] started running after them . . . ." She yelled, "'You goddamn motherfuckers, give me back my money,'" and "'Help, police.'" The men replied, "'Get lost.'" They began moving faster and turned right when they reached Adeline. As it appeared that they were about to get into a parked car, Rosebrough yelled, "'I've got your license number, you shit heads.'" Instead of getting in the car, the two men ran across the road and disappeared down another street. Rosebrough eventually retrieved a receipt from the ATM; her bank card and the money were gone.

Two cameras installed with the ATM took pictures during these events. Police Sergeant Michael Stafstrom obtained copies of the photographs and later spotted appellant. Stafstrom, who was not wearing his uniform at the time, called for assistance. Two other police officers then intercepted and arrested appellant. During questioning after waiving his rights, appellant stated, "'This is the only robbery I've done, I didn't do anymore, I guarantee it, I swear I haven't done anymore.'"

The Alameda County District Attorney subsequently filed an information charging appellant with robbery (Pen. Code, § 211)[2] and alleging 17 prior convictions under section 667. After the court granted a bifurcation motion, appellant waived a jury trial as to the prior conviction allegations. At the end of trial, the jury convicted appellant of robbery. The court then found that the alleged prior convictions were true. After sentencing appellant to a total of fifteen years in prison, the court suspended execution of sentence and placed appellant on probation for five years on condition that he serve one

---

[2]All further statutory references are to the Penal Code.

year in county jail and participate in a drug rehabilitation program. This timely appeal followed.

## II. Discussion

### A. *The Instructions Were Erroneous*

Section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Appellant's sole contention on appeal is that the court erred in instructing the jury on the "force or fear" element of this offense. In this regard, the court told the jury at the beginning of trial that robbery is a taking "accomplished by means of force or fear . . . ." It further explained: "But in order for theft to become a robbery, the taking . . . must be accomplished by means of force, violence, fear or intimidation. In other words, robbery requires the additional elements to be proved; namely, that the taking . . . was accomplished by means of force, fear, violence or intimidation." Similarly, after presentation of the evidence, the court gave the following instruction: "Every person who takes personal property in the possession of another against the will and from the person or immediate presence of that person, accomplished by means of force or fear, and with the specific intent permanently to deprive such person of such property is guilty of the crime of robbery . . . . [¶] In order to prove such crime, each of the following elements must be proved: . . . fourth, the taking was accomplished either by force, violence, fear or intimidation . . . ." The court further instructed the jury that "[t]he element of fear in the crime of robbery may be either the fear of an unlawful injury to the person or property of the person robbed or to any of her relatives or family members, or the fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery."

Appellant does not challenge these instructions. However, during deliberations, the jury requested further instruction on the meaning of the word "intimidation." The court responded: "First of all, it is not necessary that robbery be accomplished by means of both force and fear. Procuring the property by means of either force or fear is sufficient to comply with the requirements of the statute. [¶] Where intimidation is relied upon, it must be established by proof of conduct, words or circumstances reasonably calculated to produce fear. [¶] As used in the legal context, intimidation requires

conduct that is reasonably calculated to produce fear."[3]  ▮  Appellant contends that this instruction "was erroneous because it supported the prosecution's argument that even in the absence of a finding of fear, 'intimidation alone' was sufficient to find that a robbery had occurred." He asserts that "the court's failure to further instruct the jury that the use of intimidation must result in the victim's yielding her property due to fear essentially removed an element of the crime from the jury's determination."[4]

▮  In considering a claim of instructional error, "we ascertain at the threshold what the relevant law provides. We next determine what meaning the charge conveys in this regard." (*People* v. *Warren* (1988) 45 Cal.3d 471, 487 [247 Cal.Rptr. 172, 754 P.2d 218].) "The test is whether there is a 'reasonable likelihood that the jury . . . understood the charge' in a manner that violated [the] defendant's rights. [Citations.]" (*People* v. *McPeters* (1992) 2 Cal.4th 1148, 1191 [9 Cal.Rptr.2d 834, 832 P.2d 146].) In making this determination, "we consider the specific language under challenge and, if necessary, the charge in its entirety. [Citation.]" (*People* v. *Warren, supra*, 45 Cal.3d at p. 487.)

▮  Having reviewed the record in its entirety, we agree that the instructions were erroneous.  ▮  "The element of fear for purposes of robbery is satisfied when there is sufficient fear to cause the victim to comply with the unlawful demand for [her] property. [Citation.]" (*People* v. *Ramos* (1980) 106 Cal.App.3d 591, 601-602 [165 Cal.Rptr. 179].) "Although the victim need not explicitly testify that he or she was afraid in order to show the use of fear to facilitate the taking [citations], there must be evidence from which it can be inferred that the victim was in fact afraid, and that such fear allowed the crime to be accomplished. [Citations.]" (*People* v. *Mungia* (1991) 234 Cal.App.3d 1703, 1709, fn. 2 [286 Cal.Rptr. 394].)

▮  We agree with appellant that the court's instructions left unclear whether the jury had to find that Rosebrough was, in fact, afraid. Respondent correctly asserts that the court informed the jury that robbery is a taking

---

[3]The court gave this instruction after denying the jury's request for a dictionary and explaining: "The reason we don't send a dictionary in is that it is important that we use the term and define the term as it is used in the legal context and not as it may exist in Webster's Dictionary or some other form of dictionary. And you are admonished not to consult any outside dictionaries but to accept the definitions that I give you now."

[4]When the prosecution first requested that the court give an instruction defining "intimidation," defense counsel objected, arguing that " 'intimidation' is a common word that people can understand," and that such an instruction would add an unnecessary gloss on the word "fear" and would improperly highlight the prosecution's theory of the case. When the court later gave the instruction, defense counsel again objected, arguing that the prosecution must show "circumstances reasonably inducing fear" and "that it is indeed the fear that is produced that results in the acquisition of the property."

accomplished by means of force or fear. However, the instruction setting forth the specific elements of the crime (CALJIC No. 9.40 (5th ed. 1988 bound vol.)) stated the fourth element as a taking "accomplished either by force, violence, fear or intimidation . . . ." In later instructing that, "[w]here intimidation is relied upon, it must be established by proof of conduct, words or circumstances reasonably calculated to produce fear," the court created ambiguity as to whether "fear" and "intimidation" are different concepts for purposes of robbery and whether the jury had to find that Rosebrough was, in fact, afraid in order to reach a guilty verdict.

Moreover, the record shows that the prosecution's comments may have reinforced the implication that such a finding was not necessary, and that "fear" and "intimidation" are different concepts. In closing argument, the prosecution emphasized that proof of "either fear or intimidation is satisfactory" for a conviction. It further argued: "Intimidation, then, is the primary factor in the case which we have put forward to you. [¶] What is intimidation. I submit to you that intimidation is conduct which is calculated to produce fear." Defense counsel responded by arguing that Rosebrough's actions were not those of someone who was afraid and that the evidence failed to show beyond a reasonable doubt "that the fear was in fact the mechanism by which the theft took place." In rebuttal, the prosecution argued: "And you'll notice during that entire presentation, the defense lawyer did not speak once about whether or not Ms. Rosebrough was intimidated, about what intimidation occurred. He focused entirely upon fear. I'll speak to that, too. But intimidation alone would be enough because it's force, fear or intimidation in the elements of robbery." Towards the end of the rebuttal, the prosecution argued: "The robbery was clearly accomplished by force or fear, and I submit to you, even more so than fear, by pure intimidation." Thus, the prosecution's arguments exacerbated the ambiguities that the instruction created regarding the meanings of "fear" and "intimidation" and the required findings.

The confusion that occurred in this case results from what we believe is an ambiguity in CALJIC No. 9.40, which defines robbery as a taking "accomplished either by force, violence, fear or intimidation . . . ." Section 211 refers only to a taking "accomplished by means of force or fear"; it does not mention violence or intimidation. Courts applying the statute, however, have often used "violence" as a synonym for "force," and "intimidation" as a synonym for "fear." (E.g., *People* v. *Green* (1980) 27 Cal.3d 1, 54 [164 Cal.Rptr. 1, 609 P.2d 468] [discussing the "act of force or intimidation by which the taking is accomplished in robbery"], disapproved on another ground in *People* v. *Hall* (1986) 41 Cal.3d 826, 834, fn. 3 [226 Cal.Rptr. 112, 718 P.2d 99]; *People* v. *Clary* (1887) 72 Cal. 59, 61 [13 P. 77] [robbery

"is larceny, with the element of force or intimidation added"]; *People* v. *Calliham* (1947) 81 Cal.App.2d 928, 930-931 [185 P.2d 342] ["[e]ither force or intimidation is the gist" of robbery]; see also 2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against Property, § 642, p. 724 [robbery requires that property "be taken by either force (violence) or fear (intimidation)"].) In light of these decisions, former CALJIC No. 9.10 (4th ed. 1979 bound vol.) defined this element of the crime as a taking "accomplished either by force *or* violence *or by* fear or intimidation *or by both* . . . ." (Italics added.) The emphasized parts of this former instruction helped clarify that, to convict, a jury had to find that the defendant accomplished the taking by force, which is synonymous with violence, or by fear, which is synonymous with intimidation. The current instruction, which omits the emphasized parts and defines the element simply as a taking "accomplished either by force, violence, fear or intimidation," arguably conveys the idea that each of these terms represents a different concept, and that conviction is proper if the jury finds any one of the four.[5] If the instruction made clear that "fear" and "intimidation" were synonymous, further definition of the latter term would be unnecessary. A still better solution would be simply to omit the terms "violence" and "intimidation" from the instruction altogether, leaving only the statutory terms "force" and "fear."

The decision on which the trial court relied in further defining "intimidation," *People* v. *Borra* (1932) 123 Cal.App. 482 [11 P.2d 403], does not establish that "intimidation" and "fear" are different for purposes of robbery.[6] In *Borra*, the court rejected an evidentiary challenge to a robbery conviction, finding "ample evidence of fear on the part of the [victim] in spite of the fact that he said he was not frightened . . . ." (*Id.* at p. 484.) In reaching this conclusion, the court explained: "It is not necessary that the robbery be accomplished by means of both force and fear. Procuring the property by means of either force or fear is sufficient to comply with the requirements of the statute. In 54 Cal. Jur. 1067, section 173, it is said: 'Where intimidation is relied upon, it must be established by proof of conduct, words, or circumstances reasonably calculated to produce fear. But it is not necessary that there be proof of actual fear, as fear may be presumed where there is just cause for it.' "[7] (*Borra, supra,* 123 Cal.App. at p. 484.) Thus, *Borra* is simply another example of a court using the term "intimidation" as a synonym for the term "fear." It does not establish that "intimidation" is somehow different from "fear" or that a jury may return a robbery

---

[5]The prosecution adopted this very interpretation in the trial court. In initially requesting an instruction defining "intimidation," it stated: "Force, violence, fear are three very similar types of concepts, yet intimidation is a slightly different kind of concept, a less severe, if you will, concept."

[6]In defining "intimidation," the trial court specifically cited this decision.

[7]Although *Borra* purports to be quoting from California Jurisprudence First, we have been unable to locate the quoted passage anywhere in that source. We quote it again here to explain *Borra*.

conviction without finding that the victim was actually afraid. It simply establishes that a jury may *infer* actual fear "from the circumstances despite even superficially contrary testimony of the victim. [Citations.]" (*People* v. *Iniguez* (1994) 7 Cal.4th 847, 857 [30 Cal.Rptr.2d 258, 872 P.2d 1183] [citing *Borra*]; see also *People* v. *Renteria* (1964) 61 Cal.2d 497, 499 [39 Cal.Rptr. 213, 393 P.2d 413] [citing *Borra* and holding that the prosecution is "not 'bound' by the [victim's] testimony that he was not in fear [where] there is other evidence which will support the conclusion that he acted in fear"].)

## B.  THE ERROR WAS HARMLESS

Having found that the trial court erred in instructing the jury, we must now consider whether that error requires reversal of appellant's conviction. ▇ In *People* v. *Harris* (1994) 9 Cal.4th 407 [37 Cal.Rptr.2d 200, 886 P.2d 1193] (hereafter *Harris*), which also involved misinstruction on an element of robbery, our Supreme Court established that we must determine "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' [Citations.]" (*Id.* at p. 424.) Where, as here, the error is a misdescription of an element of the offense, "we must inquire whether it can be determined, beyond a reasonable doubt, that the jury actually rested its verdict on *evidence* establishing the requisite . . . element of robbery independent of the force of the . . . misinstruction. [Citation.]" (*Id.* at p. 429, fn. omitted.) In answering this question, we must first ascertain " '. . . what evidence the jury actually considered in reaching its verdict. . . .' " (*Id.* at p. 426.) This determination depends not on a " '. . . subjective enquiry into the jurors' minds . . . ,' " but on " '. . . analysis of the instructions given to the jurors . . . .' " (*Ibid.*) " '. . . Since that enquiry cannot be a subjective one into the jurors' minds, [we] must approach it by asking whether the force of the evidence presumably considered by the jury in accordance with the instructions is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the [misinstruction].' [Citation.]" (9 Cal.4th at pp. 426-427, italics omitted.) To conclude that the error did not contribute to the verdict, we must find it " '. . . unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. . . .' "[8] (9 Cal.4th at p. 426, italics omitted.)

▇ Applying this test, we find the error here to be harmless. The court's instructions left the jury free to consider all of the evidence the

---

[8]In explaining the applicable test, *Harris* relies extensively on *Yates* v. *Evatt* (1991) 500 U.S. 391 [114 L.Ed.2d 432, 111 S.Ct. 1884, 91] (hereafter *Yates*), disapproved on another ground in *Estelle* v. *McGuire* (1991) 502 U.S. 62, 72-73, footnote 4 [116 L.Ed.2d 385, 399, 112 S.Ct. 475]. (*Harris, supra,* 9 Cal.4th at pp. 425-431.) *Yates* involved an impermissible presumption rather than a misdescription of an element of a crime. (*Harris, supra,* 9 Cal.4th at p. 425.) As the United States Supreme Court has explained, "[t]he problem" in either case

parties presented at trial. The instructions that defined robbery as a taking "accomplished by means of force or fear" and stated that the prosecution must prove a taking "accomplished either by force, violence, fear or intimidation," allowed consideration of all of the evidence. Since, under these instructions, "fear" was an alternative to "intimidation," the ambiguity regarding the instruction on the latter term did not improperly restrict the jury's consideration of the evidence. Moreover, evidence that a defendant's "acts did induce fear in an individual victim *is* probative of whether his acts were objectively intimidating." (*U.S.* v. *Higdon* (5th Cir. 1987) 832 F.2d 312, 315.) Thus, even under an erroneous understanding of the term "intimidation," the jury would have considered all of the evidence before it.

At trial, Rosebrough's testimony provided the evidence relating to whether appellant's conduct induced fear in her. When appellant and his companion approached Rosebrough at the ATM, it was night and there was no one else in the vicinity. They "approached from . . . the rear . . . seem[ingly] out of nowhere." They stood "very close together" and were "staring" at Rosebrough. Appellant, who was closest to Rosebrough, told her to " '[s]tand back.' " He "sort of had a smirk on his face," and spoke in "a calm . . . but . . . firm voice," "a voice like he really meant business." Upon hearing appellant's words, Rosebrough "felt [she] was in big trouble" and that she "was being robbed . . . ." She "responded immediately" by stepping back from the ATM. She followed the instructions because she "felt they meant business when they said 'Stand back,' " and she "didn't know if they were going to hit [her] or pull a weapon on [her] or what was their plan." Given her concerns, she "wanted to get some distance between these two men and [herself] just as a matter of personal safety." She therefore moved back 20 to 30 feet in the direction of her car, which she believed "would be safety for" her.

We find that this evidence "is 'of such compelling force as to show beyond a reasonable doubt' that the erroneous instruction 'must have made no difference in reaching the verdict obtained.' [Citation.]" (*Harris, supra,* 9 Cal.4th at p. 431, fn. omitted.) ▮ The extent of the victim's fear "do[es]" not need to be extreme for purposes of constituting robbery. [Citations.]" (*People* v. *Ramos, supra,* 106 Cal.App.3d at p. 602.) ▮ On the

---

"is that the jury could have been impermissibly aided or constrained in finding the relevant element of the crime . . . ." (*Pope* v. *Illinois* (1987) 481 U.S. 497, 503-504, fn. 7 [95 L.Ed.2d 439, 447, 107 S.Ct. 1918].) In such cases, harmless error analysis is permissible so long as the error does not entirely preclude the jury from considering an element or affect the composition of the record. (*Id.* at pp. 502-503 [95 L.Ed.2d at p. 446]; *People* v. *Cummings* (1993) 4 Cal.4th 1233, 1315 [18 Cal.Rptr.2d 796, 850 P.2d 1]; *People* v. *Lee* (1987) 43 Cal.3d 666, 675-676 [238 Cal.Rptr. 406, 738 P.2d 752].) Harmless error analysis is proper in this case because the error "affect[ed] only an aspect of an element" (*Cummings, supra,* 4 Cal.4th at p. 1315) and did not affect the composition of the record.

record in this case, the jury could not have failed to find that Rosebrough retreated from the ATM because appellant's conduct caused her to be afraid. Appellant bases his contrary argument on evidence that "it just took a matter of seconds for the taking of the money to have occurred" and that Rosebrough's "response was to yell obsenities [*sic*] at the men and chase after the men . . . ." Although this evidence permits an inference that Rosebrough experienced emotions *in addition* to fear, it does not alter our conclusion that the record overwhelmingly establishes that Rosebrough stepped back from the ATM because appellant's conduct induced fear in her. Thus, the error was harmless beyond a reasonable doubt.

## III. DISPOSITION

The judgment is affirmed.

Merrill, J., and Corrigan, J., concurred.

A petition for a rehearing was denied March 6, 1995.