Filed 11/4/15  P. v. Anderson CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B259053 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. VA127748 & KA100332) |
| v. | |
| SAMUEL ANDERSON et al., | |
| Defendants and Appellants. | |

APPEAL from the judgments of the Superior Court of Los Angeles County, John A. Torribio, Judge.  Affirmed as modified.

Michele A. Douglass, under appointment by the Court of Appeal, for Defendant and Appellant Samuel Anderson.

Christopher Love, under appointment by the Court of Appeal, for Defendant and Appellant Vernon E. Green.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven E. Mercer, Deputy Attorney General, and Kathy S. Pomerantz, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendants and appellants Samuel Anderson and Vernon E. Green were found guilty in count 1 of second degree robbery in violation of Penal Code section 211[1] and petty theft with prior theft-related convictions in violation of section 666, subdivision (a) in counts 2 (as to Anderson) and count 3 (as to Green). The jury was unable to reach a verdict on the allegation that Anderson personally used a firearm in commission of the robbery. (§ 12022.53, subd. (b).) In bifurcated proceedings, the trial court found true the allegations that Anderson and Green had each suffered a prior conviction under the three strikes law (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)), and a prior serious felony conviction (§ 667, subd. (a)). The court found Anderson served two prior prison terms and Green served three prior prison terms. (§ 667.5, subd. (b).)

The court granted the prosecution's motion to dismiss the firearm use allegation against Anderson. (§ 12022.53, subd. (b).) Defendants' motions for new trial were denied. Both defendants were sentenced to state prison for 17 years. The sentence consisted of the high term of five years as to count 1, doubled pursuant to the three strikes law, plus one year for each of two prior prison term enhancements.[2]

Green contends that there is insufficient evidence to support his robbery conviction, and that the trial court erred in denying his motion for new trial by applying an incorrect legal standard. Anderson joins in Green's contentions, and separately contends that the court erred in imposing one of the prior prison term enhancements. The Attorney General concedes the trial court imposed one of Anderson's prior prison term enhancements in error, but contests the remaining substantive issues.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

[2] The trial court imposed and stayed a third one-year prior prison term enhancement (§ 667.5, subd. (b)) with respect to Green. The court imposed and stayed prison terms of three years in counts 2 and 3.

We agree with Anderson that the one-year prior prison enhancement imposed on the basis of his 1996 conviction for assault with a deadly weapon must be stricken. In all other respects, the judgments are affirmed.

**FACTS**

*Prosecution Evidence*

The Incident

On December 1, 2012, defendants approached Anthony Jimenez in a shopping center parking lot and asked him if he wanted to buy an iPad for $300. Jimenez relayed the offer to his friend and neighbor Marciel Andrade. Both Jimenez and Andrade were interested in purchasing iPads. Jimenez arranged to meet defendants later that night in the alleyway behind his house, but defendants never showed up.

One of the defendants called Jimenez from a blocked phone number and arranged to meet him in the alley behind Jimenez's house around 5:00 p.m. the next day. Andrade went out to meet defendants in the alley, while Jimenez stayed in a garage across the street. Andrade was carrying about $3,000 to pay for iPads – $2,700 of his own money and $300 that Jimenez had given him. Defendants pulled up in a car, and Anderson got out and opened the door so he and Andrade could talk about the deal inside. Andrade got into the back with Anderson. Green stayed in the driver's seat and left the car running. Andrade mentioned that defendants were hard to get in touch with, and turned to reach for his cell phone. When he turned back, Anderson was pointing a chrome 9-millimeter handgun at him. Anderson said, "Give me all your money." Andrade gave Anderson the money and his cell phone because of the display of the gun.

3

Andrade got out of the car, said, "Fuck . . . [t]hey got me," and then called 911.[3] Andrade told the 911 operator he was robbed by two older black males. He said that he got in the back of their car to buy iPads and one of the men pulled out a chrome 9-millimeter gun. Andrade gave the man all of the money and his cell phone. He said the man with the gun "grabbed" his money, and the men drove away.

Jimenez saw Andrade get into the back seat of the car with Anderson, and saw him get out afterwards. Andrade called Jimenez over and said, "Did you see that? [¶] [¶] . . . They stole the money from me, pulled a gun." Jimenez did not witness what happened in the car.

Detective Alfred Salazar investigated the crime. He determined that defendants were driving a rental car on the day of the incident, and was able to obtain Anderson's cell phone number from the rental car agreement. Deputies used the cell phone's GPS signal to track the car to a shopping center. Defendants were detained and searched. No guns were recovered in the search. Eleven fake iPad boxes were discovered in the trunk of the car. Another fake iPad box and five MacBook Pro boxes containing broken laptops were found inside the car.

Andrade and Jimenez identified Anderson in a photo six-pack. Jimenez also identified Green in a photo six-pack.

Evidence of Uncharged Crimes

Evidence of Anderson's uncharged prior crimes was introduced pursuant to Evidence Code section 1101, subdivision (b), to show that he had possessed a gun on a prior occasion. On October 23, 2012, Lionyl Clark agreed to buy a MacBook Pro from Anderson for $400. Anderson called Clark multiple times from a phone number that was blocked to arrange a meeting time. When they met, Clark gave the money to Anderson, and a man who was with Anderson (not Green) handed Clark a MacBook Pro box. The

---

[3] The call was played for the jury.

4

box felt too light. Clark tried to open it as Anderson was getting back into the car. Anderson's shirt lifted up and Clark saw what looked like the handle of a gun. Anderson did not draw the gun, but Clark "backed down" after he saw it. Anderson drove away quickly.

*Defense*

Anderson testified in his own defense. He and Green met Jimenez and Andrade at Lakewood Boulevard and Imperial Highway. Andrade got into the car with them, but Anderson sat in the front seat. He gave Andrade fake iPads and a MacBook Pro in exchange for approximately $3,000. He did not rob Andrade with a chrome pistol. Anderson put the fake electronics in the back of Jimenez's truck. Jimenez opened one of the boxes as Anderson was getting back into his car. Andrade asked if he had left his cell phone in Anderson's car. Anderson said he had not and drove off. He noticed Andrade's cell phone in the back later and threw it out the window.

Deputy Sheriff Gena LeFlore interviewed Andrade and Jimenez at the scene. Andrade told the deputy he entered the car on the rear driver's side and that Anderson went from the front passenger seat to the rear passenger side. Jimenez did not tell Deputy LeFlore that he saw anyone get into or out of the car. He said he saw the car speed away after Andrade got out.

An investigator from the district attorney's office interviewed Clark. Clark said he was not sure if Anderson had a gun, or if he just thought it was a gun.

Green did not testify or present any witnesses on his behalf.

**DISCUSSION**

*Sufficiency of the Evidence in Support of the Robbery Conviction*

5

Defendants contend that the evidence was insufficient to support their robbery convictions because the jury did not find that Anderson used a gun or any other weapon, and there was no other evidence that Anderson took Andrade's money without his consent or by force or fear. We reject defendants' attempts to reargue the persuasiveness of the evidence, and conclude that the evidence was sufficient to support the jury's verdicts.

In determining whether sufficient evidence supports a conviction, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] . . . 'We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) The "testimony of a single witness is sufficient to support a conviction" unless it is physically impossible or inherently improbable. (*People v. Young* (2005) 34 Cal.4th 1149, 1181; see Evid. Code, § 411 ["Except where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact"].)

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) "'"The element of fear for purposes of robbery is satisfied when there is sufficient fear to cause the victim to comply with the unlawful demand for [his] property."'" (*People v. Davison* (1995) 32 Cal.App.4th 206, 212 (*Davison*).) 'The extent of the victim's fear "do[es] not need to be extreme . . . ."' (*Id.* at p. 216.) '[T]he fear

6

necessary for robbery is subjective in nature, requiring proof "that the victim was in fact afraid, and that such fear allowed the crime to be accomplished."' (*People v. Anderson* (2007) 152 Cal.App.4th 919, 946.) 'Actual fear may be inferred from the circumstances, and need not be testified to explicitly by the victim.' (*People v. Cuevas* (2001) 89 Cal.App.4th 689, 698.) ""Where intimidation is relied upon, it [can] be established by proof of conduct, words, or circumstances reasonably calculated to produce fear.""" (*People v. Brew* (1991) 2 Cal.App.4th 99, 104 []; see also *Davison*, *supra*, at p. 214 [intimidation and fear are synonymous in this context].)" (*People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1319.)

"'As a general rule, inherently inconsistent verdicts are allowed to stand. [Citations.] For example, "if an acquittal of one count is factually irreconcilable with a conviction on another, *or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense*, effect is given to both." [Citation.]' (*People v. Avila* (2006) 38 Cal.4th 491, 600.) The system accepts the possibility that 'the jury arrived at an inconsistent conclusion through "mistake, compromise, or lenity." [Citation.]' (*Ibid*.)" (*People v. Guerra* (2009) 176 Cal.App.4th 933, 943.) "'[A] criminal defendant . . . is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. This review should not be confused with the problems caused by inconsistent verdicts. Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. [Citations.] This review should be independent of the jury's determination that evidence on another count was insufficient.' (*United States v. Powell* (1984) 469 U.S. 57, 67.)" (*People v. Lewis* (2001) 25 Cal.4th 610, 656.)

The jury's inability to reach a verdict on the personal use of a firearm allegation does not render the evidence insufficient to support the robbery convictions. The robbery statute does not require a jury finding of use of a firearm. Andrade testified that Anderson pointed a chrome 9-millimeter handgun at him and said, "Give me all your money." He also testified that he gave Anderson the money and his cell phone because

7

Anderson pulled out the gun. Andrade's testimony alone is sufficient evidence to support the finding that Anderson took Andrade's property by force or fear. No further finding was required.

*New Trial Motion*

Defendants next contend that the trial court failed to apply the correct legal standard in considering their motions for new trial on the basis that the guilty verdicts for robbery were contrary to the evidence.

At the hearing on the motions for new trial, defense counsels argued insufficient evidence supported the verdicts. The prosecutor responded, "[A]s the court knows, the issue is whether or not there's evidence supporting the verdicts that [the jury] did reach. There is." She argued that the jury's verdict on the firearm allegation, though disappointing, had no bearing on the verdicts for robbery. She summarized, "The point is the verdict they did reach is supported by the evidence, so we object to granting the motion[s] for new trial." The trial court denied the motions without articulating the substantial evidence standard or discussing its reasoning.

Defendants contend the prosecutor's statements that "there's evidence" and "evidence support[s] the [jury's] verdicts" suggested *any* evidence would be sufficient to support the verdicts, and that the summary nature of the trial court's ruling indicates it applied this incorrect standard rather than independently reviewing the record for sufficient evidence, as required. They also argue that the court improperly deferred to the jury in its ruling rather than deciding for itself whether credible sufficient evidence proved their guilt beyond a reasonable doubt. We disagree.

"'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "It is a basic presumption indulged in by reviewing courts that the trial court

8

is presumed to have known and applied the correct statutory and case law in the exercise of its official duties." (See *People v. Mack* (1986) 178 Cal.App.3d 1026, 1032.)

Here, there is no indication that the trial court applied the wrong legal standard, and its failure to articulate the standard or the reasons for its ruling does not persuade us otherwise. Where a trial court does not articulate the standard used, we presume it has applied the proper standard. (See *In re Andre G.* (1989) 210 Cal.App.3d 62, 65.) Failure to articulate the proper legal standard is deemed error only where "either a new standard of proof has been recently announced or the applicable standard is unclear." (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 548, superseded by statute on another ground, as stated in *In re David H.* (2008) 165 Cal.App.4th 1626, 1642, fn. 14.) It is well-established that a trial court reviews the record independently for sufficiency of the evidence where it is alleged that the verdict is contrary to the evidence in a motion for new trial, and defendants do not contend otherwise. (See *People v. Knutte* (1896) 111 Cal. 453, 455; *People v. Lum Yit* (1890) 83 Cal. 130, 133-134; *People v. Robarge* (1953) 41 Cal.2d 628, 633.) There is no reason to believe the trial court misapprehended the law or its own role in assessing the evidence.

### *Prior Prison Term Enhancement*

The trial court imposed both a section 667.5, subdivision (b) one-year prior prison term enhancement and a five-year section 667, subdivision (a)(1) enhancement based upon Anderson's 1996 conviction for assault with a deadly weapon in superior court case No. 95WF0324. As the Attorney General concedes, it is not permissible for a court to impose both a section 667.5, subdivision (b) enhancement and a section 667, subdivision (a)(1) serious felony enhancement based on the same conviction. (See *People v. Jones* (1993) 5 Cal.4th 1142, 1153 (*Jones*) [trial court cannot impose both prior prison term enhancement and prior serious felony conviction enhancement based on same underlying prior conviction]; accord *People v. Perez* (2011) 195 Cal.App.4th 801, 805 (*Perez*).) The

9

proper remedy is to strike the lesser enhancement, and we will do so here.  (*Jones*, *supra*, at p. 1153; *Perez, supra*, at p. 805.)

## DISPOSITION

The judgment is modified to strike Anderson's Penal Code section 667.5, subdivision (b), one-year prison term enhancement that was based on the 1996 conviction for assault with a deadly weapon in superior court case No. 95WF0324.  The trial court is directed to prepare and forward to the Department of Corrections and Rehabilitation an amended abstract of judgment.  In all other respects, the judgments are affirmed.

KRIEGLER, J.

We concur:

MOSK, Acting P. J.

BAKER, J.