Filed 5/24/16  In re Joseph B. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JOSEPH B., a Person Coming Under the Juvenile Court Law. | B265390<br>(Los Angeles County<br>Super. Ct. No. YJ38066) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH B.,<br><br>    Defendant and Appellant. | |

APPEAL from findings and orders of the Superior Court of Los Angeles County. Irma J. Brown, Judge.  Affirmed.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Timothy M. Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Joseph B. (minor) appeals an order declaring him a ward of the juvenile court based on the finding that he committed second degree robbery (Pen. Code, § 211). On appeal, he contends: (1) there was insufficient evidence that he took personal property by force or fear and thereby committed robbery; and (2) the probation condition that he not knowingly participate in the activities of criminal street gangs or illegal tagging crews (a) violated due process because it was vague and overbroad, and (b) it impermissibly restricted his civil liberties.

We find no error and affirm.

**FACTS**

The Los Angeles County District Attorney's Office filed an amended petition pursuant to Welfare and Institutions Code section 602. A contested adjudication hearing was held on March 9, 2015.

Julian Farias (Farias) testified that while walking down stairs in a building in the City of Gardena, he was approached by minor. Minor gently placed his hand on the center of Farias's chest, which caused him to stop in his "tracks." Next, minor said, "Stop right there for me, homie. Check it out. This is the hood. Empty out your pockets." Minor's other hand was inside his pants or a pants pocket as if he was concealing a weapon. Farias asked minor if he was serious. At the time, Farias was holding $40. Minor "slipped" the money out of Farias's hand, and then proceeded to search one of his pants pockets, which was empty. While minor was searching Farias's sweater, his car keys jingled inside the front pocket. Farias was afraid that minor would take the car keys, so he shoved his way past minor, went down the stairs and exited the building.

The juvenile court sustained the petition.

Minor was placed with his parents on home detention. Later, the juvenile court declared minor a ward of the juvenile court, ordered probation, and placed him with his grandmother. Condition 13B of minor's probation provided: "You must not knowingly participate in any type of criminal street gang or illegal tagging activity. You must not knowingly associate with members of illegal tagging crews or criminal street gangs."

2

This timely appeal followed.

## DISCUSSION

## I. Evidence Sufficient.

Minor contends that People's evidence did not support a finding of robbery. When a juvenile challenges the sufficiency of the evidence against him, a reviewing court examines the evidence "in the light most favorable to the judgment and determine whether any rational trier of fact could have found the essential elements of the charged crime or allegation proven beyond a reasonable doubt." (*People v. Morehead* (2011) 191 Cal.App.4th 765, 777–778.)

Robbery is the "taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.) The elements do not have to occur in a particular order. Thus, robbery occurs "whether a perpetrator relies on force or fear to gain possession or to maintain possession against a victim who encounters him for the first time as he carries away the loot." (*People v. Gomez* (2008) 43 Cal.4th 249, 265.)

Force for purposes of robbery "must be a quantum more than that which is needed merely to take the property from the person of the victim[.]" (*People v. Burns* (2009) 172 Cal.App.4th 1251, 1253, 1259.) The force can be slight. For example, a case held that when a defendant tapped a cashier on the shoulder to move her away from a cash register so he could take money from it, he employed sufficient force for the crime to constitute a robbery. (*People v. Garcia (*1996) 45 Cal.App.4th 1242, 1246, overruled on grounds in *People v. Mosby* (2004) 33 Cal.4th 353.)

"The fear mentioned in [Penal Code] Section 211 may be either: [¶] 1. The fear of an unlawful injury to the person or property of the person robbed, or of any relative of his or member of his family; or, [¶] 2. The fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery." (Pen. Code, § 212.) "The threat to inflict injury required for a robbery . . . need not be accompanied by the present ability to carry it out. Thus, the use of an

3

unloaded gun [citation] or a simulated gun [citations] is sufficient if it causes the victim to part with his property." (*People v. Wolcott* (1983) 34 Cal.3d 92, 100.)

"'[A] victim need not explicitly testify that he or she was afraid in order to show the use of fear to facilitate [a] taking [citations][.]'" (*People v. Davison* (1995) 32 Cal.App.4th 206, 212.) A robbery conviction will stand as long as there was "'evidence from which it can be inferred that the victim was in fact afraid, and that such fear allowed the crime to be accomplished. [Citations.]' [Citation.]" (*Ibid*.)

Minor argues that he did not use more force than the quantum necessary to take the money, so this was not a robbery accomplished by force. Next, he argues that Farias was not afraid until he thought minor was going to take his car keys, so this robbery was not accomplished by fear.

His arguments hold no sway.

When minor placed his hand on Farias's chest and impeded his descent down the stairs, minor used a quantum of force more than needed to merely take the money from Farias. Like the tapping on the shoulder in *People v. Garcia*, *supra*, 45 Cal.App.4th 1242, putting a hand on Farias's chest facilitated the taking of personal property. Consequently, we conclude that there was sufficient evidence for the trier of fact to conclude beyond a reasonable doubt that minor committed robbery.

Moreover, the evidence was sufficient to establish that Farias parted with his money due to fear caused by minor. Farias testified that he "felt scared[.]" Though he did not pinpoint the moment he became scared, we note that the prosecutor asked, "Did you know if the minor was armed?" Farias replied, "He approached me and he had his hand inside what appeared to be either his pants or a pocket, but he had his hand as if he had something concealed." The prosecutor followed up by asking, "So the minor made a gesture to you indicating . . . what you believed was a concealed weapon?" Farias said, "Yes." A few moments later, the prosecutor asked, "So you thought—you were afraid in part because you thought he might be armed?" Farias said, "Exactly." Also, Farias testified that they were alone in a stairwell at night.

4

In our view, Farias effectively testified that he was in fear the moment he was approached, stopped and asked to empty his pockets because he thought minor was armed. That was sufficient to prove the necessary fear, particularly when coupled with the circumstances: they were alone in a stairwell at night; minor stated that they were in the "hood," which implied they were in a dangerous place and Farias had no choice but to comply with minor's demand; and Farias did not prevent minor, a menacing stranger, from searching him after minor took the money.

## II. First Sentence of Condition 13B Not Vague or Overbroad.

Minor argues that the first sentence of condition 13B is vague and overbroad. This argument is misplaced.[1]

### A. *Legal Principles*.

When a ward of the juvenile court under Welfare and Institutions Code section 602 "is placed under the supervision of the probation officer or committed to the care, custody, and control of the probation officer, [it] may make any and all reasonable orders for the conduct of the ward[,] . . . [and it] may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (Welf. & Inst. Code, § 730, subd. (b).) Consequently, a juvenile's probation conditions may be broader than those pertaining to adult offenders. "'"'This is because juveniles are deemed to be more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed. The state, when it asserts jurisdiction over a minor, stands in the shoes of the parents. And a parent may "curtail a child's exercise of the constitutional rights . . . [because a] parent's own constitutionally protected 'liberty' includes the right to 'bring up children' [citation] and to 'direct the upbringing and education of children.'"' Even conditions that infringe on constitutional rights may be

---

[1] Minor's counsel did not object to condition 13B. Nonetheless, because minor presents a probation condition issue that is purely legal, no objection was required. (*In re Justin S.* (2001) 93 Cal.App.4th 811, 815.)

5

valid if they are specifically tailored to fit the needs of the juvenile. [Citation.]" (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1142 (*Shaun R.*).)

Of course, a juvenile court must exercise its discretion within the boundaries of due process. "'''"It is an essential component of due process that individuals be given fair notice of those acts which may lead to a loss of liberty. [Citations.] This is true whether the loss of liberty arises from a criminal conviction or the revocation of probation. [Citations.] [¶] '"Fair notice" requires only that a violation be described with a "'reasonable degree of certainty'" . . . so that "ordinary people can understand what conduct is prohibited." . . . .'" [Citations.]'" (*In re Byron B.* (2004) 119 Cal.App.4th 1013, 1018.) Moreover, "the overbreadth doctrine requires that conditions of probation that impinge on constitutional rights must be tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation. [Citations.]" (*In re Victor L.* (2010) 182 Cal.App.4th 902, 910 (*Victor L.*).)

Words in probation conditions should be read contextually to determine whether they have sufficient constitutional concreteness. (*People v. Lopez* (1998) 66 Cal.App.4th 615, 631 (*Lopez*).)

**B. *Vagueness*.**

Minor suggests that first sentence of condition 13B is vague because it does not specify the types of noncriminal behavior he is expected to avoid. In particular, he claims that the words activity and participate are vague.

1. Activity.

Narrowly, the word "activity" means "a specific deed, action, function, or sphere of action." (http://www.dictionary.com/browse/activity.) Broadly, it refers to "the state or quality of being active," "animation" or "a use of energy or force." (*Ibid.*) Based on the purpose of the probation conditions—to reform and rehabilitate minor—we easily conclude that condition 13B refers to the more limited definition of the word, and that it therefore denotes specific deeds or actions. And, in context, the specific deeds or actions targeted by the probation condition are the criminal or noncriminal deeds or actions of criminal street gangs. And because condition 13B has a knowledge element, there is no

6

probation violation unless minor knowingly participates in proscribed activity. Notably, the second sentence of condition 13B states that minor must not "knowingly associate with members of illegal tagging crews or criminal street gangs." In our view, the first and second sentences in condition 13B overlap and work together to prevent minor—for his own good—from knowingly doing any criminal or noncriminal act with or for criminal street gangs. Consequently, we find that condition 13B gives minor reasonable notice of the meaning of "activity" and, that it encompasses the noncriminal deeds or actions of criminal street gangs.

Minor suggests that *Victor L.* dictates the opposite conclusion.

In that case, the court was confronted with the following probation condition: ""'[Appellant] shall not be in any areas where gang members are known by [appellant] to meet or get together, or areas known by [appellant] for gang-related activity, nor participate in any gang activity.'" (*Victor L.*, *supra*, 182 Cal.App.4th at p. 913, fn. 7.) On appeal, the minor argued that the phrase "'gang-related activity'" was vague and overbroad. (*Id*. at p. 914.) He suggested that "he might be guilty of violating probation simply by shopping at the same grocery store or using the same post office that other gang members patronize." (*Id*. at p. 915.) The court did not "condone" the appellant's interpretation, stating that it was unreasonable. Nonetheless, the court agreed that "the gang-related activities condition [was] impermissibly vague in that it [did] not provide notice of what areas [appellant] may not frequent or what types of activities he must shun. The condition, as written, [was] not sufficiently precise for [appellant] to know what [was] required of him. [Citation.]" (*Id*. at p. 914.)

*Victor L.* reasoned that "the word 'activity' is one of surpassing breadth. One dictionary defines it, inter alia, as 'the quality or state of being active,' with 'active' being defined as, 'characterized by action rather than contemplation or speculation.' [Citation.] The use of the phrase 'gang-related activity' in the condition of probation raises the specter that it could be misapplied by law enforcement unless further specification were provided. [¶] Indeed, the 'gang-related activity' restriction appears to have been intentionally designed to banish juvenile gang members from a broad category of

7

locations, not simply areas where gang members 'meet' or 'get together,' which are the focus of a separate proscription. Gang membership and 'participat[ion] in any gang activity' are also separately forbidden. A separate clause also prohibits both one-to-one and group association with gang members. . . . Therefore, the 'gang-related activity' condition appears to have been intended to prevent [appellant] from coming into close contact with gang members. . . . Clearly, the court wanted to steer [appellant] entirely away from all gang influence, leaving no loopholes for maintaining his gang ties. [¶] We question, however, whether it lawfully achieved its purpose. While no doubt intended to serve the reformative and rehabilitative goals of probation, the condition as written, without further specificity, is not sufficiently clear to put [appellant] on notice of the prohibited conduct. The ambiguity of the chosen language conjures up divergent possible definitions of the term 'gang-related activity,' and reasonable minds may differ as to precisely which 'areas' would come within the condition's purview." (*Victor L.*, *supra*, 182 Cal.App.4th at pp. 915–916.)

Ultimately, the court elected to modify the probation condition "to provide for the probation officer to notify [appellant] of the areas he must avoid." (*Victor L.*, *supra*, 182 Cal.App.4th at pp. 917–918.)

*Victor L.* offers us zero guidance. That case concerned itself with whether the appellant received fair notice of areas where he could not go. The probation condition challenged here is devoid of a geographical element, be it express or implied. It does not, as minor suggests, use virtually the same language as *Victor L.*, nor was it designed to achieve the same purpose as the probation condition at issue in *Victor L.* The purpose of condition 13B was to prohibit minor from participating in criminal street gang activities wherever those activities might occur.

Insofar as minor tacitly suggests that the first sentence of condition 13B would prevent him from shopping at the same grocery store or using the same post office that other gang members patronize, we follow suit with *Victor L.* and reject the notion as unreasonable. By separately and without association going to the same grocery store or using the same post office, minor would be engaged in activity that was independent of

8

criminal street gang activity. Also unreasonable is minor's suggestion that the trial court should specify "what type of non-criminal behavior [he] is expected to avoid." It would be impossible for the trial court to list every type of noncriminal behavior that criminal street gang members might engage in. Condition 13B is far more reasonable because it focuses on the participants, not on the behavior. Thus, if criminal street gang members go bowling, watch television or travel, minor will know those are activities targeted by condition 13B precisely because they involve the deeds and actions of those particular criminal street gang members. While he may independently engage in those activities if he does not associate with criminal street gang members, he may not do those activities with criminal street gang members.

    2. <u>Participate</u>.

  Minor recognizes that the word "participate" has been defined as to "take a part or share (in)." He does not debate its meaning. Rather, he suggests that the use of the word in condition 13B compounds the vagueness of the word activity. In his estimation, the condition means he "is forbidden to take part or share in anything a criminal street gang or illegal tagging crew does," and it gives law enforcement "almost unlimited discretion to determine whether some apparently innocuous association" violates minor's probation.

  As we have explained, the word "activity" is not vague in the context of condition 13B. Thus, the word "participate" does not operate to compound any vagueness. Minor has been provided fair notice that he cannot participate (to take a part or share in) any noncriminal activity of a criminal street gang.

  We do not share minor's concern that the interplay of the words "activity" and "participate" in the first sentence of condition 13B indicates that he can have his probation revoked due to an "apparently innocuous association." He is forbidden from knowingly associating with criminal street gangs and illegal tagging crew. If minor knowingly associates—which is an intentional act—then the association cannot be labeled innocuous. More to the point, his association argument is not properly focused on the first sentence of condition 13B.

**C. *Overbreadth*.**

Minor does not make a particular overbreadth argument. He does not, for example, suggest that the juvenile court failed to narrowly draw condition 13B to serve the purposes of reformation and rehabilitation. Rather, he discusses overbreadth generally and explains that in cases such as *Lopez*, *supra*, 66 Cal.App.4th at pp. 622, 628, courts have held that a probation condition prohibiting a defendant from associating with gang members is overbroad unless it contains a knowledge element. Here, of course, there is a knowledge element. Thus, minor has not demonstrated that the first sentence of condition 13B is overbroad.

**III. Condition 13B Not an Impermissible Restriction on Civil Liberties.**

Minor contends that probation condition 13B impermissibly restricts his right to freedom of association and privacy because it prohibits him from "innocuous participation in behavior which might be even tangentially associated with a street gang or tagging crew."

It is, of course, undeniable that United States and California citizens have these rights. (U.S. Const., 1st Amend.; Cal. Const., art. I, § 1; *People v. Garcia* (1993) 19 Cal.App.4th 97, 102; *Tom v. City and County of San Francisco* (2004) 120 Cal.App.4th 674, 679–680.) But under certain circumstances, these rights may be curtailed by probation conditions. (*People v. Garcia*, *supra*, 19 Cal.App.4th at p. 102.) Probation conditions imposed on a juvenile must be specifically tailored to fit his or her needs. (*Shaun R.*, *supra*, 188 Cal.App.4th at p. 1142.) If they are consistent with the reformative and rehabilitative purpose of probation and the juvenile court's exercise of parental authority, the probation conditions will withstand constitutional scrutiny. (*In re Frank V.* (1991) 233 Cal.App.3d 1232, 1242–1243.)

We conclude that condition 13B is designed to protect minor from promoting or engaging in criminal activities, and from associating with the members of either criminal street gangs or illegal tagging crews. Thus, it meets the reformative and rehabilitative purpose of probation because its purpose is to keep minor from lapsing back into a life of crime. Also, it is consistent with the juvenile court's obligation to stand in the shoes of

minor's parents and exercise their parental authority by imposing conditions that will benefit him.  The probation condition does not impermissibly burden minor's constitutional rights.

## DISPOSITION

The findings and orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
          ASHMANN-GERST


We concur:


_____, P. J.
    BOREN


_____, J.
    CHAVEZ

11