Filed 1/30/23 P. v. Mills CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL HENRY MILLS,<br><br>Defendant and Appellant. | F082548<br><br>(Super. Ct. No. F20906359)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan B. Conklin, Judge.

Sangeeta Sinha, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

On September 19, 2020, defendant Michael Henry Mills demanded money from two employees working at a restaurant while pretending to possess a gun. A jury convicted defendant of two counts of second degree robbery, and the trial court sentenced defendant to nine years in prison.

On appeal, defendant contends that defense counsel provided ineffective assistance of counsel by failing to request a limiting instruction as to the jury's use of his prior felony theft convictions (CALCRIM No. 316) and a cautionary instruction regarding defendant's out-of-court statements (CALCRIM No. 358). Defendant also contends that the trial court erred in failing to instruct the jury that it must find defendant instilled fear in both victims. The People respond that defense counsel could have had strategic reasons for not requesting the limiting and cautionary instructions, defeating defendant's claims of ineffective assistance of counsel, and the trial court properly instructed the jury as to the elements of robbery.

We agree with the People and affirm the judgment.

## PROCEDURAL BACKGROUND

The District Attorney of Fresno County filed an information on November 16, 2020, charging defendant with two counts of second degree robbery (Pen. Code, § 211),[1] and alleging one prior "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and one prior serious felony conviction enhancement (§ 667, subd. (a)(1)).[2] Defendant pleaded not guilty to the charges and denied all allegations.

---

[1] Undesignated statutory references are to the Penal Code.

[2] The trial court granted the prosecutor's motion to amend the information by interlineation on January 29, 2021, to correct the date of defendant's prior conviction.

After a six-day trial, the jury convicted defendant of both charges on January 28, 2021. Defendant waived his right to a jury trial, and the trial court found true both prior conviction allegations.

The trial court granted defendant's motion to strike his prior conviction as to count 2 and sentenced defendant on March 17, 2021, to four years in prison as to count 1 (§§ 211, 667, subd. (e)(1)), a two-year concurrent term as to count 2 (§ 211), and a consecutive five-year enhancement (§ 667, subd.(a)(1)), for a total term of nine years. The court also ordered defendant to pay victim restitution (former § 1202.4, subd. (f)(2)), a $300 restitution fine (former § 1202.4), a suspended $300 parole revocation restitution fine (§ 1202.45), a $30 criminal conviction assessment (Gov. Code, § 70373), and a $40 in court operations assessment (§ 1465.8).

Defendant timely appealed on March 18, 2021.

**FACTS**

Alexis H. and Veronica L. (the victims) were working together at a restaurant on September 19, 2020. Defendant entered the restaurant, and Alexis approached him at the counter. After Alexis asked to assist him, defendant forcefully instructed her, "Put your hands up. Give me your money." Alexis believed that defendant had a gun because defendant appeared to be pointing a gun at her from under his shirt. Alexis testified that she was a little scared because she "didn't know if he really had [a gun] or what. Because then [she] thought he had a gun because it looked like it." She also testified that she was scared and nervous because she did not know what would happen and she believed that he had a gun.

Veronica rounded the corner, and defendant also instructed her to put her hands up. She saw that defendant had his hand under his shirt and saw the shape of a gun, but she could not tell whether it was a gun. Veronica testified that Alexis said defendant wanted the money from the register, and then defendant told Veronica to give him the money. Veronica handed defendant money from the register, and Alexis saw that he did

3.

not have a gun when he reached for the money. Alexis whispered to Veronica not to give defendant the money, but Veronica gave it to defendant anyway because she was still scared, did not know what to expect, and believed it was the safest thing to do.

When defendant took his hand out of his sweater and reached for the money, Alexis realized that defendant did not have a gun but had been pointing his fingers as if he did. She did not know if defendant had any weapons. Veronica told defendant to just take the money and then said to him, "God bless you." Defendant appeared confused when he took the money and then looked as if he wanted to cry.

The victims walked away from the counter after defendant took the money, but then defendant raised his voice to ask them if he could help them do anything. Veronica asked defendant to just leave because she did not know his intent and she believed it would be better for her and Alexis if defendant left. Defendant left, and Veronica calmly retrieved her phone and then locked the door because she was scared. Alexis tried to call security while Veronica attempted to call the police.

Officer Thimothee Heu responded to the restaurant and spoke with the victims. They were shaking, appeared scared based upon their tone of voice, and told Heu that they were scared.

Defendant testified that he was working at a nearby carwash and went to the restaurant to introduce himself to the women working there. He put his hand under his shirt to wipe away sweat from working at the carwash. He made a joke to Alexis, and she and Veronica both laughed. Defendant asked the victims if he could work for money. They appeared scared of him and raised their hands, but he never told them to do so, nor did he tell them to give him money from the register. Defendant removed his hand from under his shirt to show them that he did not have any weapons. Alexis said, "[O]h no," as if she was telling Veronica, "[D]on't give him the money." Veronica gave him money, which confused him because defendant wanted to work for it. He left after Veronica

4.

asked him to leave.  Defendant also testified that he had been convicted of prior felony theft-related offenses in 2012 and 2018.

**DISCUSSION**

**I.     Defendant has failed to show that defense counsel was ineffective in failing to request an instruction to limit the jury's use of defendant's prior convictions to assess his credibility.**

### A.     Background

The trial court granted the prosecutor's motion to permit defendant to be impeached with his 2012 robbery conviction and 2018 possession of a stolen vehicle (§ 496d, subd. (a)) conviction.  In so doing, the trial court limited the prosecutor to asking defendant, "Have you been convicted of a felony crime involving theft?"  During his testimony, defense counsel elicited that defendant had felony theft-related convictions from 2012 and 2018.  The prosecutor also elicited the fact of the two convictions from defendant.

Defense counsel did not request the trial court to instruct the jury in accordance with CALCRIM No. 316, which provides:

> "*<Alternative A—felony conviction>*
>
> "[If you find that a witness has been convicted of a felony, you may consider that fact [only] in evaluating the credibility of the witness's testimony.  The fact of a conviction does not necessarily destroy or impair a witness's credibility.  It is up to you to decide the weight of that fact and whether that fact makes the witness less believable.]
>
> "*<Alternative B—prior criminal conduct with or without conviction>*
>
> "[If you find that a witness has committed a crime or other misconduct, you may consider that fact [only] in evaluating the credibility of the witness's testimony.  The fact that a witness may have committed a crime or other misconduct does not necessarily destroy or impair a witness's credibility.  It is up to you to decide the weight of that fact and whether that fact makes the witness less believable.]"

5.

The trial court instructed the jury regarding its judgment of the credibility of witnesses pursuant to CALCRIM No. 226 and listed conviction of a felony as a factor for their consideration in determining whether to believe a witness. In closing argument, the prosecutor referred to defendant's prior convictions one time while arguing that the jury should disbelieve defendant's testimony in part because he was previously convicted of felonies. Defense counsel argued that the jury should believe defendant's testimony and never addressed defendant's prior convictions. The prosecutor did not mention defendant's felony convictions in closing other than as described and did not argue that the jury should believe defendant committed the crimes because he had committed crimes involving theft previously.

## B.      Standard of Review and Applicable Law

"In order to establish a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient, and that the defendant suffered prejudice as a result of such deficient performance." (*People v. Mickel* (2016) 2 Cal.5th 181, 198 (*Mickel*), citing *Strickland v. Washington* (1984) 466 U.S. 668, 687–692.) "To demonstrate deficient performance, [a] defendant bears the burden of showing that counsel's performance ' " ' "fell below an objective standard of reasonableness … under prevailing professional norms." ' " ' [Citation.] To demonstrate prejudice, [a] defendant bears the burden of showing a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*Mickel*, at p. 198.)

"[C]ertain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding." (*Mickel*, *supra*, 2 Cal.5th at p. 198.) "The record on appeal may not explain why counsel chose to act as he or she did. Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate

6.

reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*Ibid.*) "Moreover, we begin with the presumption that counsel's actions fall within the broad range of reasonableness, and afford 'great deference to counsel's tactical decisions.' " (*Ibid.*)

"Accordingly, [our Supreme Court] ha[s] characterized defendant's burden as 'difficult to carry on direct appeal,' as a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ' " 'no rational tactical purpose' " ' for an action or omission." (*Mickel, supra,* 2 Cal.5th at p. 198.) If the record fails to disclose why trial counsel acted or failed to act in the manner challenged, the ineffective assistance of counsel claim must be rejected unless counsel was asked for, and failed to provide, an explanation or there could be no plausible explanation. (*People v. Pope* (1979) 23 Cal.3d 412, 426, overruled on another ground in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.)

## C.    Analysis

We reject defendant's contention that defense counsel provided ineffective assistance in failing to request CALCRIM No. 316. In this case, the record contains little discussion of the jury instruction conference and, therefore, we have no record of defense counsel's reasons for not requesting such an instruction. As the People argue, such a specific instruction could risk focusing the jury's attention on defendant's convictions, especially as the jury had been instructed with CALCRIM No. 226, which also discussed the jury's use of a felony conviction in assessing the believability of defendant as a witness. As noted, the fact of the felony convictions was elicited by both counsel in brief questioning, and the robbery conviction was described only as a theft conviction to minimize prejudice caused by any similarity to the charged offenses. During closing argument, the prosecutor argued only that the jury should not trust defendant's testimony

7.

due to the felony convictions but did not suggest the jury should use the conviction to find defendant committed the instant offenses.

Numerous courts have rejected similar ineffective assistance claims where the record is silent as to why trial counsel failed to request the limiting instruction, reasoning that " '[a] reasonable attorney may have tactically concluded that the risk of a limiting instruction … outweighed the questionable benefits such instruction would provide.' " (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1053; see also *People v. Hinton* (2006) 37 Cal.4th 839, 878 ["Defendant also complains that counsel's failure to request a limiting instruction concerning his prior murder conviction demonstrated ineffective assistance, but counsel may have deemed it unwise to call further attention to it."]; *People v. Bonilla* (1985) 168 Cal.App.3d 201, 206 ["The record does not show why [a limiting instruction on the use of a prior conviction] was not requested. It may well be that trial counsel did not want such an instruction, believing that it would emphasize the prior conviction. Since the record is silent on counsel's reasoning and a satisfactory explanation exists for not making the request, the case must be affirmed on appeal."].)

Accordingly, we conclude that defendant is not entitled to reversal of the judgment on the ground that defense counsel rendered ineffective assistance by failing to request a limiting instruction as to the jury's use of his prior convictions.

## II. Defendant has failed to show that defense counsel was ineffective in failing to request an instruction to caution the jury regarding defendant's out-of-court inculpatory statements.

### A. Background

Both Alexis and Veronica testified that defendant demanded money from the cash register and told them to put their hands up. Both also testified that after Veronica handed defendant the money, he appeared confused, acted as if he wanted to cry, and then asked them if he could help them do anything. Defendant testified as to his words and actions after receiving the money but denied that he demanded money or ordered the

8.

victims to raise their hands. Defense counsel did not request the trial court to instruct the jury with CALCRIM No. 358, which provides:

> "You have heard evidence that the defendant made [an] [oral] [and] [a] [written] statement[s] (before the trial … ). You must decide whether the defendant made any (such/of these) statement[s], in whole or in part. If you decide that the defendant made such [a] statement[s], consider the statement[s], along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the statement[s].

> "[Consider with caution any statement made by (the/a) defendant tending to show (his/her) guilt unless the statement was written or otherwise recorded.]"

### B.     Standard of Review and Applicable Law

See *ante*, part I.B.

### C.     Analysis

As to defense counsel's deficient performance, defendant argues that the victims' testimony regarding defendant's statements during the robbery "constituted the bulk of the prosecution's case" and was not recorded and, therefore, "[t]here was no tactical or strategic reason for counsel to fail to seek a limiting instruction." We disagree. Although the record does not show why counsel did not request that the court instruct the jury with CALCRIM No. 358, we discern potential tactical reasons for her refraining to do so. (See *People v. Weaver* (2001) 26 Cal.4th 876, 926 ["where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions"]; see also *People v. Lucas* (1995) 12 Cal.4th 415, 436–437 [there is a " 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' "]; *People v. Mitcham* (1992) 1 Cal.4th 1027, 1059 [generally, a reviewing court "may not second-guess" trial counsel's strategic and tactical choices].) As the People argue, defense counsel's decision to forgo the cautionary instruction had a conceivable strategic basis. Defense counsel argued in closing that the

victims were confused about defendant's intent and that defendant's statements after the robbery demonstrated that he did not intend to rob the victims. Because counsel was also relying on defendant's statements during the robbery, a reasonable defense attorney may not have wanted to risk the jury treating those statements with caution.

The People rely upon *People v. Diaz* (2015) 60 Cal.4th 1176 (*Diaz*), in which our Supreme Court held that absent a request by defendant, a trial court is not required to instruct with CALCRIM No. 358 (or its equivalent). (See *Diaz*, at p. 1189.) Our Supreme Court observed, "It is not uncommon that the statements of a defendant contain both incriminating and exculpatory elements." (*Id.* at p. 1193.) Although defendant contends the jury would have understood CALCRIM No. 358 to apply only to statements proving guilt and not to exculpatory statements, *Diaz* explained, "A defendant, however, might prefer not to rely on the jury's ability to discriminate between those incriminating admissions it should view with special caution and those exculpatory statements that are not subject to the instruction." (*Diaz*, at p. 1193.) In *Diaz*, our Supreme Court concluded that a trial court is not required to provide this instruction sua sponte because "it is appropriate to allow the defendant to make the *strategic* decision whether to request the instruction." (*Ibid.*, italics added.) We recognize that *Diaz* did not involve a determination of whether counsel was ineffective in failing to request the cautionary instruction. However, *Diaz*'s recognition that defense counsel's decision to request a cautionary instruction in such circumstances is a strategic decision necessarily informs our conclusion that we cannot find ineffective assistance of counsel on appeal where there is a conceivable strategic reason for counsel's challenged decision and that reason does not appear on the record.

In addition, defendant has not demonstrated the second prong of prejudice to support his ineffective assistance of counsel claim. Even before *Diaz* changed the law by discarding the trial court's duty to sua sponte give a cautionary instruction regarding out-of-court statements, its erroneous omission had "frequently been held to be harmless

10.

error in light of such general instructions on witness credibility," such as CALCRIM No. 226. (*Diaz*, *supra*, 60 Cal.4th at pp. 1191, 1196–1197.)

Here, the jury was instructed with CALCRIM No. 226, which extensively covered the jury's role in evaluating a witness's testimony, including a variety of factors bearing on the truth or accuracy of that testimony. Those factors included a witness's bias, interest, or other motive; prior consistent or inconsistent statements; ability to remember the matter in question; and admissions of untruthfulness. In addition, the trial court instructed the jury with a modified version of CALCRIM No. 301 (Single Witness's Testimony): "The testimony of only one witness can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence." The jury was further instructed with CALCRIM No. 302: "If you determine there's a conflict in the evidence[,] you must decide what evidence, if any, to believe." The jury was told not to "accept the testimony of the greater number of witnesses" and "[w]hat is important is whether the testimony or any other evidence convinces you, not just the number of witnesses who testify on a certain point." Moreover, according to CALCRIM No. 226, the trial court also instructed: "You may believe all, part[,] or none of any witness'[s] testimony." Finally, the jury was instructed with CALCRIM No. 318 (Prior Statements as Evidence) that it may use prior statements "to evaluate whether the witness's testimony in court is believable."

When a jury is thoroughly instructed on the numerous factors involved in assessing witness credibility, failure to give the cautionary instruction in CALCRIM No. 358 is harmless because the jury has been adequately warned to view the witnesses' testimonies with caution. (*Diaz*, *supra*, 60 Cal.4th at p. 1196; *People v. Salazar* (2016) 63 Cal.4th 214, 251.) "Under these circumstances, it is not reasonably likely or possible that the error in omitting a cautionary instruction affected the outcome at the guilt or penalty phases." (*People v. Johnson* (2018) 6 Cal.5th 541, 588–589 [other jury instructions made need to determine whether defendant made a statement reasonably

apparent and alerted the jury of the need to carefully consider witness's testimony, including significance of a witness's prior consistent and inconsistent statements, discrepancies in a witness's testimony or between the witness's testimony and that of others, a witness's willfully false statement in material part, conflicting testimony, and a witness's credibility in general].)

We conclude that defendant has failed to demonstrate that his counsel was ineffective.

**III. The trial court did not err in its instructions to the jury as to the elements of robbery.**

**A. Background**

The charging information was read to the prospective jurors at the commencement of the trial. Count 1 charged that defendant robbed Alexis, and count 2 charged that defendant robbed Veronica. The prosecutor explained that count 1 and count 2 related to different victims in his opening statement.

Defense counsel requested that the jury be instructed as to the elements of robbery pursuant to CALCRIM No. 1600. The trial court granted the request and instructed the jury:

> "The defendant is charged in Counts One and Two with robbery in violation of Penal Code Section 211. To prove the defendant guilty of this crime the People must prove the following: One, the defendant took property that was not his own; two, the property was in the possession of another person; three, the property was taken from the other person or his or her immediate presence; four, the property was taken against that person's will; five, the defendant used force or fear to take the property or to prevent the person from resisting; and six, when the defendant used force or fear to take the property he intended to deprive the owner of the property permanently. [¶] … [¶]
>
> " … A person does not actually have to hold or touch something to possess it. It's enough if the person has control over it either personally or through another person.

12.

"A business employee who is on duty has possession of the business owner's property. Fear, as used here, means fear of injury to the person himself or herself or immediate injury to someone else present during the incident, or to that person's property.

"An act is done against a person's will if that person does not consent to the act. In order to consent the person must act freely and voluntarily and know the nature of the act."

The trial court further instructed the jury in accordance with CALCRIM No. 3515: "Each of the counts charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one including any lesser included offense, which will be addressed in a separate instruction." The trial court explained that the verdict form contained verdicts for count 1 and count 2, which it described as "two separate charged robberies." The verdict for count 1 designated the robbery as involving Alexis, and the verdict for count 2 designated the robbery as involving Veronica.

In reviewing the facts and law, the prosecutor repeated the elements of robbery as contained in the jury instruction and that:

"The key here is actually element number five. That is the main issue in this case. The defendant used force or fear to take the property. Were they afraid? Because you've heard some statements yes, I was scared from Veronica. I was a little scared, little later on. I didn't know if it was a joke. I didn't know what was going to happen. So that is the main issue in this case."

The prosecutor then cataloged the evidence separately as to each victim that proved they were both scared.

In closing, defense counsel argued that the victims misinterpreted defendant's request to earn money by working for them as a robbery. She argued that Veronica testified that defendant did not appear threatening and did not behave like a robber, and that Veronica told Officer Heu that she believed defendant was joking. Defense counsel argued that Alexis tried to stop Veronica from providing the money to defendant because

13.

Alexis realized that defendant was not armed when he pulled his hand from inside his shirt and was no longer afraid of him.

During deliberations, the jury asked the trial court to hear testimony from Alexis and defense counsel's cross-examination of Officer Heu who had previously testified that Veronica told him she believed defendant was joking at first, did not believe the situation was too serious, and defendant did not do anything threatening and appeared as if he wanted to cry after receiving the money.

## B.     Standard of Review and Applicable Law

"No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, … unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.)

We review de novo whether a jury instruction correctly states the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "Once we have ascertained the relevant law, we determine the meaning of the instructions in this regard. Here, the question is whether there is a 'reasonable likelihood' that the jury understood the charge as the defendant asserts. [Citations.] 'In addressing this question, we consider the specific language under challenge and, if necessary, the charge in its entirety. [Citation.] Finally, we determine whether the instruction, so understood, states the applicable law correctly.' " (*People v. Kelly* (1992) 1 Cal.4th 495, 525–526, first bracketed insertion added.)

" ' "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' " (*People v. Solomon* (2010) 49 Cal.4th 792, 822.) " 'It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions.' " (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433.) We review the instructions as a whole and presume that jurors are intelligent and

14.

able to understand and correlate the trial court's instructions and apply them to the facts of the case. (*People v. Carey* (2007) 41 Cal.4th 109, 130.)

If the trial court has adequately instructed on the general principles of law, it is the defendant's obligation to request any clarifying or amplifying instructions. (*People v. Lee* (2011) 51 Cal.4th 620, 638.) "[T]he failure to request clarification of an instruction that is otherwise a correct statement of law forfeits an appellate claim of error based upon the instruction given." (*People v. Rundle* (2008) 43 Cal.4th 76, 151, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421.)

### C. Analysis

Defendant argues that the trial court, using a modified version of CALCRIM No. 1600, did not instruct the jury that it must find that as to each count, each element satisfied as to each victim and that it could not use evidence regarding one victim to satisfy the elements for the other victim. Defendant argues that the trial court was required to sua sponte instruct the jury that each victim's will must have been overcome by their own fear, and the trial court's use of CALCRIM No. 1600 without such language failed to correctly define the element of fear and relieved the prosecution of its burden of proof. We disagree.

"Robbery is defined in section 211 as 'the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.' Robbery is a crime of violence committed against a person. [Citation.] Robbery of a particular person has not occurred unless property was taken from the person's immediate presence and the defendant used force or fear to take the property or to prevent the person from resisting." (*People v. Scott* (2009) 45 Cal.4th 743, 749 [citing with approval CALCRIM No. 1600].) Two or more persons may be in joint constructive possession of a single item of personal property, and multiple convictions of robbery are proper if force or fear is applied to multiple victims in

joint possession of the property taken. (*People v. Ramos* (1982) 30 Cal.3d 553, 589 ["We view the central element of the crime of robbery as the force or fear applied to the individual victim in order to deprive him of his property. Accordingly, if force or fear is applied to two victims in joint possession of property, two convictions of robbery are proper."], revd. on other grounds *sub nom. California v. Ramos* (1983) 463 U.S. 992.)

Section 212 delineates the meaning of the term "fear" as used in section 211: "The fear mentioned in Section 211 may be either: [¶] 1. The fear of an unlawful injury to the person or property of the person robbed, or of any relative of his or member of his family; or, [¶] 2. The fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery."

The trial court gave standard jury instructions under CALCRIM No. 1600 on the fear element of robbery, telling the jury that "defendant used force or fear to take the property or to prevent the person from resisting" and "[f]ear, as used here, means fear of injury to the person himself or herself or immediate injury to someone else present during the incident, or to that person's property." "To establish a robbery was committed by means of fear, the prosecution 'must present evidence " … that the victim was in fact afraid, and that such fear allowed the crime to be accomplished." ' " (*People v. Morehead* (2011) 191 Cal.App.4th 765, 771, quoting *People v. Cuevas* (2001) 89 Cal.App.4th 689, 698; see *People v. Davison* (1995) 32 Cal.App.4th 206, 212; *People v. Mungia* (1991) 234 Cal.App.3d 1703, 1709, fn. 2.)

We conclude that the jury instructions, as a whole, conveyed to the jury that it must find as to each count that the victim named therein was afraid when defendant obtained the property. Specifically, the jury was instructed to decide each count separately and, as provided on the verdict forms, each count addressed a separate victim. We conclude that the jury would have understood the word "person" in the instruction to refer to the victim named in that count when deciding whether the evidence satisfied the elements as to that particular count. Therefore, the jury would have understood element

16.

five of CALCRIM No. 1600 required the evidence to show that defendant used force or fear to take the property or to prevent the victim named in each count from resisting and that it should determine whether the fear actually experienced by each victim was sufficient to enable defendant to take the property against that person's will.

Additionally, "in evaluating the reasonable likelihood that the jury understood its charge in a manner that violated [defendant]'s rights, we may consider the arguments of counsel." (*People v. Cuevas*, *supra*, 89 Cal.App.4th at p. 699, citing *People v. McPeters* (1992) 2 Cal.4th 1148, 1191, superseded by statute on another ground as stated in *Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1106, 1116; see *People v. Kelly*, *supra*, 1 Cal.4th at p. 526.) Here, closing arguments by both sides made it clear that the jury was being called on to consider the actual fear experienced by both Alexis and Veronica. Neither counsel attempted to argue that the fear experienced by just one of the victims could be used to convict defendant of both robbery counts.

Considering the complete and accurate instructions given to the jury, as well as the arguments of counsel emphasizing the issue of both Alexis's and Veronica's actual states of mind during the robbery, we conclude that there is no reasonable likelihood the jury understood the charge in the manner argued by defendant or that violated defendant's rights.

## IV. Defendant was not deprived of due process by any cumulative error.

Defendant contends the cumulative effect of the alleged instructional errors and trial counsel's ineffective assistance combined to deprive defendant of his right to a fair trial and due process. Under the cumulative error doctrine, "a series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error." (*People v. Hill* (1998) 17 Cal.4th 800, 844; accord, *People v. Capers* (2019) 7 Cal.5th 989, 1017.) We have rejected defendant's ineffective assistance and instructional error claims, and there were no errors in the case.

17.

Accordingly, there is no cumulative effect to weigh. (See *In re Reno* (2012) 55 Cal.4th 428, 483 [holding that each of the defendant's individual claims "cannot logically be used to support a cumulative error claim [where] we have already found there was no error to cumulate"], superseded by statute on other grounds as stated in *In re Friend* (2021) 11 Cal.5th 720, 728.) Furthermore, "[t]o the extent there are a few instances in which we have ... assumed [the] existence [of error], no prejudice resulted. The same conclusion is appropriate after considering their cumulative effect." (*People v. Valdez* (2012) 55 Cal.4th 82, 181.)

**DISPOSITION**

The judgment is affirmed.

HILL, P. J.

WE CONCUR:

POOCHIGIAN, J.

DETJEN, J.